216 N.J. Super. 143 (1987)
523 A.2d 238
IN THE MATTER OF RAYMOND MORRISON, APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 12, 1987.
Decided March 20, 1987.
*146 Before Judges PETRELLA, BILDER and SCALERA.
Charles J. Sprigman, Jr., attorney for appellant.
Basile, Testa and Testa, attorneys for respondent, City of Bridgeton (Michael L. Testa, on the brief).
W. Cary Edwards, Attorney General, attorney for respondent, Civil Service Commission (James J. Ciancia, Assistant Attorney General, of counsel, Lewis A. Scheindlin, Deputy Attorney General, on the brief).
The opinion of the court was delivered by SCALERA, J.A.D.
*147 Raymond Morrison appeals from a final order of the Civil Service Commission terminating his position as a police officer for the City of Bridgeton after 17 years of service. We affirm.
On June 7, 1985 Bridgeton served Morrison with a Preliminary Notice of Disciplinary Action for charges arising out of an incident which occurred on May 26, 1985. Bridgeton sought Morrison's removal from the police department on the grounds of insubordination, unlawful arrest, unlawful search and seizure and failure to notify the desk officer of his location while out of his police car. A departmental hearing on these charges was held before Donald G. Maurer,[1] the Director of Police and Fire. Morrison was found guilty of all charges and a Final Notice of Disciplinary Action was issued dismissing him from employment. Morrison appealed to the Civil Service Commission and a de novo hearing was held before Administrative Law Judge (ALJ) Robert Scott. The ALJ issued his initial decision in which he found Morrison guilty of all charges but recommended that the penalty be modified from termination to a six months suspension.
Both Morrison and Bridgeton filed written exceptions to the ALJ's decision with the Commission. On April 3, 1986 the Commission issued a final decision indicating that it had "... considered the record and the Administrative Law Judge's initial decision, and having made an independent evaluation of the record... [it] accepted and adopted the Findings of Fact as contained..." therein but did not accept the ALJ's recommendation concerning the penalty. Rather, the Commission affirmed Bridgeton's removal of Morrison from office in view "of the seriousness of the instant charges, and taking into consideration [his] prior disciplinary record."
*148 In May 1984, the Chief of Police circulated a memo to all sergeants in the Bridgeton Police Department concerning the serving of arrest warrants:
ATTENTION ALL SERGEANTS:
Minor Warrants, such as parking, motor vehicle, failure to pay, etc., are to be served at a reasonable hour. This is not to occur on the 11-7 shift, unless the subject sought in the warrant is found at a public place, restaurant, etc.
On May 26, 1985 Morrison was working the 11:00 p.m. to 7:00 a.m. shift. He reported to work that evening and picked up a warrant, issued originally in December 1984, for one Monica Robinson. While the outside of the warrant indicated that it was for a "contempt of court" violation, the body of the warrant indicated that it was for failure to appear to pay a fine for violation of a dog ordinance. At the hearing before the ALJ Morrison testified that at approximately 11:30 that evening he drove by Monica Robinson's house in order to serve the warrant but noticed that her car was not there. About an hour later he again drove by and when he noticed that her car was there, he got out of the police car and knocked on the side door. When no one answered, he left. At approximately 5:45 a.m. he returned a third time and, without notifying headquarters that he was leaving his car, knocked on the side door. There was no response so he knocked on the front door. Morrison stated that "it came wide open" so he called out to see if anyone was at home. When no one answered he proceeded up the stairs, and knocked on a bedroom door. Someone inside asked, "who is out there?" and Morrison identified himself as a police officer. Mr. Robinson answered the door and Morrison informed him that he had an arrest warrant for his daughter, Monica. Monica then came out of her bedroom, got dressed and drove her car to the police station where she paid the $50 fine underlying the issuance of the warrant.
The Robinsons, however, gave a different version of what had happened. Mrs. Robinson testified that she and her husband were awakened early that morning by Morrison knocking at their bedroom door. After Morrison identified himself, and *149 asked where Monica was, they all went downstairs. Morrison explained that he thought that their home had been broken into and so he "jimmied the [front] door and it came open." Mrs. Robinson also testified that the events that night had caused her to have a nervous breakdown. Mr. Robinson similarly testified that before he went to bed that evening he checked all the doors to the house. At approximately 5:00 a.m. he and his wife were awakened by Morrison knocking on their bedroom door. After he answered the door, they all went downstairs. Morrison then indicated to them that he had "sh[aken] or jimmied or jerked" the front door in order to get into the house. Mr. Robinson inspected the door after the incident, but he said he found no marks on it.
Police Sergeant David McGuigan testified that he had investigated the incident. Morrison informed him that he had suspected that a burglary or assault, or possibly even a murder, had been committed at the Robinson's home that evening and also admitted that he had not informed the desk officer that he was leaving his patrol car. While this violated departmental policy, McGuigan stated that the decision whether or not to call in to the dispatcher was basically a judgment call. He conceded that officers generally do not radio in every time they get out of their vehicles, but emphasized the need to do so when the officer suspects that a serious crime has been committed as opposed to a situation involving an insignificant non-police related matter.
Officer Leo Rock, the radio dispatcher, testified that the only communication received from Morrison that evening was when he reported that he had arrested Monica Robinson and was bringing her in to the station. During his 16 year tenure he was not aware of anyone being brought up on charges of failure to notify the desk officer while out of car. He also indicated that most officers do not radio in every time they get out of their car.
*150 Morrison testified that he considered the contempt warrant which he had served that night to be a "major" violation. In support of this position he related a conversation that he had had with Judge Kotok of the local municipal court concerning outstanding warrants. He testified that the judge had told him that contempt of court was a "major violation." However, Judge Kotok testified that when Morrison had asked him whether he considered some types of warrants more important than others he had expressed the opinion that he considered a failure to appear warrant for a minor violation, "at the bottom of the list."
Morrison had a history of departmental infractions since the commencement of his employment as a Bridgeton policeman on September 9, 1968. In April 1971 he was suspended for five days for chronic absenteeism; in March 1978 he was suspended for ten days after being found guilty on a charge of larceny and a few months later was suspended for five more days and lost five vacation days for neglect of duty; in January 1980 he was suspended for ten days after being found guilty on two counts of insubordination. Less than two years later he was brought up on charges of leaving his assigned patrol area, of failing to report when leaving his assigned patrol area and of "soliciting and petitioning for change of assignment in an attempt to promote political influence to bring about the change of assignment." He was found guilty of all three charges and suspended for 30 days and also lost 20 vacation days.
Lastly, Donald E. Maurer, the Police Director, testified that in 1980 or 1981 Morrison had arrested his son and shortly afterwards was brought up on unrelated disciplinary charges. As a result, Maurer had recused himself as the hearing officer in that matter because he felt he might be prejudiced.
Defendant appeals the Commission's decision contending that,
Point I The hearing at the local level was unfairly biased and voids the entire proceeding.

*151 Point II The Civil Service rejected the recommendations of the Administrative Law Judge without having before it any transcript of the hearing below, thus voiding that rejection.
Point III The penalty assessed by the Civil Service Commission is arbitrary, capricious, excessive, unreasonable and without basis.
Point IV If the court will not void the entire proceedings on bias, appellant should be reinstated with back pay, counsel fees, and all benefits as of six months from the date of original removal.
Morrison initially argues that the entire proceedings are void ab initio because the hearing officer at the original departmental hearing, Donald Maurer, was prejudiced toward him and should have recused himself. Bridgeton points out that the proceeding before the ALJ was a hearing de novo, and that appellant thus had "a hearing in this matter by an unbiased individual" which precludes any review of the original departmental hearing. We agree.
N.J.S.A. 11:15-4 authorizes the Commission to inquire into the removal of a civil service employee by an appointing authority. Such inquiry is conducted through a hearing de novo. See id., N.J.S.A. 11:15-6; Ciff v. Morris County Board of Social Services, 197 N.J. Super. 307, 315 (App.Div. 1984), rev'd on other grounds 101 N.J. 251 (1985); Borough of East Paterson v. Dept. of Civil Service, 47 N.J. Super. 55, 64 (App.Div. 1957). The inquiry or hearing is for "the purpose of fairly determining whether the employee involved, by reason of his act as charged and his record of service, merits continuance therein or should be removed therefrom or otherwise disciplined for the good of the service." N.J.S.A. 11:15-5. "[T]he Commission is required to seek all of the information and evidence bearing on the merits of the case" id., and may then "`substitute its judgment as to guilt or innocence.'" Cliff, supra (emphasis in text). "It is as if there had been no prior hearing and as if no decision had been previously rendered." Id.
In the present case Morrison does not allege that the ALJ was in any way prejudiced. The ALJ conducted an entirely new (de novo) hearing, considered all of the evidence anew and made findings which were not premised on any finding of the *152 hearing officer at the local level. Hence, there is no reason to believe that any prejudice which might have existed at the local level affected the proceedings before the ALJ. Grasso v. Boro. Council of Glassboro, 205 N.J. Super. 18, 25 (App.Div. 1985) certif. den. 103 N.J. 453 (1986).
More troublesome is the contention that the Commission failed to review the transcript of the hearing before the ALJ and that such failure renders the Commission's action void. Bridgeton and the Commission do not deny that the transcript was not reviewed but argue instead that such review is required only if the agency rejects factual findings made by the ALJ or, makes new or additional findings. Since the factual findings of the ALJ were accepted completely, with only a different penalty imposed, such action obviated any duty to review the entire transcript of the proceeding. They urge that such a requirement would be counter-productive, would unduly delay the administrative process and would contravene the spirit and purpose of the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 et seq., which is designed to encourage prompt disposition of contested cases.
N.J.S.A. 52:14B-10 provides that,
(c) All hearings of ... a contested case ... shall be conducted by an administrative law judge. .. . A recommended report and decision which contains recommended findings of fact and conclusions of law and which shall be based upon sufficient, competent, and credible evidence shall be filed, ... with the agency in such form that it may be adopted as the decision in the case ... and an opportunity shall be afforded each party of record to file exceptions, objections, and replies thereto, and to present argument to the head of the agency or a majority thereof, either orally or in writing, as the agency may order direct [sic]. The head of the agency, upon a review of the record submitted by the administrative law judge, shall adopt, reject or modify the recommended report and decision no later than 45 days after receipt of such recommendations. Unless the head of the agency modifies or rejects the report within such period, the decision of the administrative law judge shall be deemed adopted as the final decision of the head of the agency.
* * * * * * * *
(d) ... A final decision shall include findings of fact and conclusions of law, separately stated and shall be based only upon the evidence of record at the hearing,

*153 ....
Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings. The final decision may incorporate by reference any or all of the recommendations of the administrative law judge. * * *
(See also N.J.A.C. 4:1-5.4 as it applies specifically to Civil Service hearings.) Pursuant to N.J.A.C. 1:1-16.4, any party may file exceptions to the initial decision. This provision further requires that,
(b) The exceptions shall specify the particular portions of the initial decision to which exception is taken; shall designate the portions of the record relied upon in support of such exceptions; and shall set out specific findings of facts, conclusions of law or dispositions proposed in lieu of those reached by the judge or in addition thereto. Exceptions to conclusions of law shall be specific; shall briefly cite the statutory provisions or principal authorities relied upon, shall set forth conclusions suggested in lieu thereof, and shall include any proposed additional conclusions.... Supporting reasons for exceptions shall be submitted in the same document or in an accompanying brief....
Under N.J.A.C. 1:1-16.5
(b) An order or final decision rejecting or modifying the findings of fact in the initial decision shall be based upon substantial evidence in the record and matters officially noticed pursuant to N.J.A.C. 1:1-15.3. Any order or final decision rejecting or modifying the initial decision shall specify in clear and sufficient detail the nature of the rejection or modification, the reasons for it, the specific evidence of record at hearing and interpretation of law upon which it is based, the precise changes in result or disposition caused by the rejection or modification.
Morrison argues that these provisions and regulations evince a clear requirement that the Commission has a responsibility to "test the findings and penalty assessment of the ALJ", and in doing so must conduct a review of the "full record which must necessarily include the transcript of the hearing." In support of this argument Morrison cites Rowley v. Bd. of Ed. of Manalapan-Englishtown, 205 N.J. Super. 65 (App.Div. 1985).
The Commission denies that agency review of the full record is mandated except in those instances where "it disagrees with the findings of the ALJ or seeks to make additional factual findings." In support of its position, it points out that the agency may affirm an initial decision merely by inaction for the 45 day period provided for in N.J.S.A. 52:14B-10(c) and further, *154 that basic administrative law principles allow for an agency head to rely upon a summary of the record prepared by a subordinate (here the ALJ), citing Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936) (commonly referred to as Morgan I) and Guerrero v. State of N.J., 643 F.2d 148 (3rd Cir.1981).
Bridgeton further bases its opposition on the premise that, as a matter of practicality, an agency head cannot "actively review the entire transcript" in every matter, citing In re Suspension of License of Silberman, 169 N.J. Super. 243 (App.Div. 1979), aff'd 84 N.J. 303 (1980). Additionally, it directs our attention to N.J.A.C. 1:1-16.4(b), supra, requiring the excepting party to "designate the portions of the record relied upon in support of such exceptions...." Since Morrison failed to do so, Bridgeton argues that he has waived his right to raise this issue. Bergen Pines County Hosp. v. N.J. Dept. of Human Services, 96 N.J. 456 (1984). Cf. R. 2:5-4(b) and 2:5-5(b).
In light of New Jersey's statutory provisions and common law treatment of administrative proceedings and the nature of judicial review thereof, we believe that a proper resolution of this issue requires an amalgam of the positions taken by the parties here. Hence, the starting point in our discussion must be Morgan v. United States, (Morgan I) supra, the seminal case in this area. In that case the Secretary of Agriculture conducted an inquiry into the reasonableness of existing livestock rates. Testimony was taken before an examiner although the Secretary ultimately prescribed the rates which could be charged. On appeal plaintiffs alleged that the Secretary had issued the order prescribing the rates without having personally heard or read any of the evidence presented to the examiner, and without having heard any oral arguments or considered the briefs submitted by the parties. 298 U.S. at 476, 56 S.Ct. at 909, 80 L.Ed. at 1292.
The Supreme Court concluded that the Department had improperly allowed one official to examine the evidence and *155 another (who had not considered the evidence at all) to make the findings and issue the order. 298 U.S. at 481-482, 56 S.Ct. at 911-912, 80 L.Ed. at 1295. However, the Court cautioned that this result was not meant to preclude the use of assistants in the performance of the department's function.
Evidence may be taken by an examiner. Evidence thus taken may be sifted and analyzed by competent subordinates. * * * The requirements are not technical. But there must be a hearing in a substantial sense. And to give the substance of a hearing which is for the purpose of making determinations upon evidence, the officer who makes the determinations must consider and appraise the evidence which justifies them. [Ibid].
The oft-quoted statement of the Morgan Court that "[t]he one who decides must hear" has been construed by numerous courts and commentators to mean that the deciding officer need not personally read the entire record or transcript but rather that he need only "consider and appraise" and personally understand the evidence contained in the record. 2 Davis, Administrative Law Treatise, ¶ 11.03 at 44 (1958). See also Guerrero v. State of New Jersey, 643 F.2d 148, 150 (3rd Cir.1981) (and cases cited therein).
It is elementary that if a fair hearing is conducted before a hearing officer, such as an ALJ, who duly weighs and considers all of the evidence and consequently makes findings of fact and recommendations to the agency, any omnibus rule requiring the agency to review the entire record in each case would effectively destroy the efficiency achieved through the use of hearing officers. See 2 Am.Jur.2d, Administrative Law, § 439 at 248-249. With the passage of the APA providing for the hearing of contested cases by an ALJ, the Legislature has clearly recognized the practical necessity of utilizing such a procedure. See In Re Uniform Admin. Procedure Rules, 90 N.J. 85 (1982). However, if the agency simply accepts or affirms the ALJ's recommendations without such a review in a case where exceptions obviously implicate an issue requiring a review of the pertinent transcripts which are furnished as hereinafter explained, such action would constitute an abdication of responsibility by the deciding entity. Cf. De Vitis *156 v. N.J. Racing Com'n. 202 N.J. Super. 484, 490 (App.Div. 1985) certif. den. 102 N.J. 337 (1985); Berdan v. City of Paterson, 1 N.J. 199, 205 (1948). Thus, a balance must be struck between the need to relieve the agency of the burden of exhaustively reviewing all of the evidence produced before the ALJ as the hearing officer in each case and the responsibility and need for the agency to "consider and appraise" that evidence in cases where a meaningful and genuine issue has been raised regarding the findings and conclusions of that hearing officer.
In Rowley v. Bd. of Ed. of Manalapan-Englishtown, 205 N.J. Super. 65 (App.Div. 1985) Donald Rowley, a tenured teacher appealed from a decision of the State Board of Education directing his dismissal on the grounds of inefficiency after his classroom performance had been monitored and evaluated on a number of separate occasions. The charges were certified to the Commissioner of Education who referred the matter for hearing before an ALJ. The ALJ issued an initial decision recommending dismissal of the charges because the local board had failed to comply with certain procedural requirements and the Commissioner adopted it as his final decision. Id. at 71.
On appeal to the State Board of Education, the Board rejected the Commissioner's decision and instead accepted the contrary view of its legal committee that the evidence justified Rowley's dismissal. The legal committee reached its conclusion solely on the basis of the documentary evidence submitted but did not review the transcript of the hearing conducted before the ALJ. Id.
In remanding the case to the State Board of Education, we observed:
If the record in this action had consisted only of the documentary evidence, we might well have been required to defer to the State Board's view of it since that view does not constitute a facially unreasonable reading of that evidence. The problem, however, is that the documentary evidence, read in the context of the testimony of the evaluators and the teacher, also supports the contrary reading by the administrative law judge and the Commissioner. It is axiomatic that fundamental concepts of administrative due process require that the basis of agency action be spelled out by specific findings of fact supported by *157 the record as a whole. A necessary corollary of this principle is that the ultimate finder of fact must read and consider all of the evidence presented. See In re Shelton College, 109 N.J. Super. 488, 492 (App.Div. 1970). The failure of the State Board to have considered the hearing transcript renders its determination a nullity. Thus, had the State Board reached its conclusion based on the full record and had it tested the findings of the administrative law judge and the Commissioner against the full record, we would have been required to defer to its contrary findings if reasonably supported thereby. Findings made, however, on the basis of a partial record and without regard to any of the testimony are obviously not entitled to any deference at all. [Id. at 75]. (emphasis supplied).
In the present case, however, the Commission did not disagree with the factual findings of the ALJ but concluded only that those findings warranted the more severe penalty originally imposed.
In Winston v. Bd. Ed. So. Plainfield, 125 N.J. Super. 131 (App.Div. 1973), aff'd 64 N.J. 582 (1974), a non-tenured elementary school teacher's contract was not renewed after she made certain remarks concerning the school administration. After the grievance was taken through various administrative levels, it finally reached the Commissioner of Education who, upon the recommendation and report of a Deputy Commissioner, dismissed the grievance for lack of standing. This decision was then affirmed by the State Board of Education. Id. at 136-137. We held there that essential fair play and administrative due process requires that "prior to its submission to the deciding officer the hearer's report [must] be made available to the parties and * * * they then [should] be given an opportunity to correct any mistakes that may appear in the report." Id. at 138 (quoting Mazza v. Cavicchia, 15 N.J. 498, 523-524 (1954)). As previously noted this right is now statutorily secured.
In the instant case Morrison was provided with a copy of the ALJ's initial decision and did file detailed exceptions. Pointing out such errors is meaningless, however, if the agency is unable to assess the merits of those exceptions absent a copy of the relevant portions of the transcript. Thus, a meaningful review necessitates that the agency be supplied timely with at least those parts of the transcript. It must then review those *158 portions which relate to material issues which are raised by the exceptions. We pause here to observe that while the APA does not delineate precisely who must bear the responsibility and cost of providing the necessary transcript in such instances, N.J.S.A. 52:11B-9(e), we conclude that such burden must fall on the party asserting any exceptions which reasonably require agency reference to and review of the relevant parts of the record. N.J.A.C. 1:1-16.4(b).
In Public Advocate Dep't. v. Public Utilities Bd., 189 N.J. Super. 491 (App.Div. 1983) the Hackensack Water Company filed a petition for a rate increase with the Board of Public Utilities. The case was heard by an ALJ who issued an initial decision. Thereafter, the Board issued a final decision which differed from the ALJ's decision in many significant respects. Id. at 498. On appeal, Rate Counsel contended that "an administrative agency, when rejecting the findings of an administrative law judge, must, in specific terms, point out where it disagrees with the ALJ and why." Id. In rejecting this argument there we held that the head of an administrative agency need not specifically address each and every point of disagreement. Rather, the "decision must demonstrate that the agency gave attentive consideration to the ALJ's recommendation as part of the record and address itself to the key items of evidence which were crucial to its decision ..." Id. at 506 (citing New Jersey Bell Tel. Co. v. State, 162 N.J. Super. 60, 77 (App.Div. 1978)).
Thus, it is evident that an agency head need not review the entire transcript of the proceeding conducted before the ALJ in all cases. Rather, that person or entity is required merely to give the ALJ's recommendations "attentive consideration" which may be accomplished through responsible delegation. Morgan I, supra.
Applying these principles to the instant case, we conclude that had Morrison supplied the necessary transcripts such a review would have been required because of the findings *159 challenged by the exceptions which were essential to a proper disposition. Considerable testimony was devoted to the issue whether the warrant served by Morrison constituted a "minor" warrant for purposes of compliance with the applicable departmental policy. Obviously, a review of the evidence relevant to this issue would have been necessary before the Commission could have fairly decided to adopt the ALJ's finding that Morrison had violated the departmental policy relating to the service of "minor" warrants. Moreover, Morrison's exceptions challenged the ALJ's conclusion that he had violated the rule pertaining to failing to radio in while out of his vehicle, in light of evidence that this rule generally was not enforced. Hence, Morrison's exceptions, challenging material and genuine factual findings by the ALJ, rendered the Commission's decision to accept those findings subject to a duty of review. Specifically the ALJ's findings could not have been properly rejected or accepted by the Commission without appraisal of the portions of the record which were relevant to the exceptions.
In order that our holding not be construed too broadly, we note our agreement with the general proposition that there are situations where an agency need not review the transcript, even if made available. Cf. City of Asbury Park v. Dept. of Civil Service, 17 N.J. 419, 422 (1955). For instance, where the party appealing does not take exception to any of the ALJ's findings, or where the agency adopts findings of the ALJ which are based on underlying facts or issues which are not in dispute, or where such findings are not material to the issues in the case. So too where the agency only modifies or rejects a recommended penalty solely on the basis of its belief that the offense warrants different punishment. Here, Morrison should have provided the Commission with the portions of the transcript relevant to the exceptions which he filed so that it could have reviewed them. Since he failed to do so, no duty arose for the Commission (or its delegate) to review them before deciding on a course of action regarding the findings and recommendations of the ALJ.
*160 We are aware that Morrison may have failed to supply the transcripts because of some confusion regarding his obligation to do so. As a result, because we have been supplied with the full transcripts of the hearing before the ALJ on this appeal, we have undertaken an independent review of the record and have concluded that the action of the Commission was amply supported by substantial credible evidence, and that its actions were not arbitrary, capricious or unreasonable. Henry v. Rahway State Prison, 81 N.J. 571, 579-580 (1980); State Dept. of Health v. Tegnazian, 194 N.J. Super. 435, 443 (App.Div. 1984) appeal after remand 205 N.J. Super. 160 (App. Div. 1985).
Proceeding to the penalty phase of these proceedings, Morrison contends that the ALJ erred in admitting his disciplinary record into evidence. Again we disagree. It was admitted solely for the purposes of determining the appropriate penalty and therefore was properly admitted. West New York v. Bock, 38 N.J. 500, 523 (1962). See also N.J.S.A. 11:15-6.
Finally, in reviewing the penalty imposed by the Commission, we note that its decision should not be reversed unless it is "arbitrary, capricious or unreasonable" or it is unsupported by "substantial credible evidence in the record as a whole." Henry v. Rahway State Prison, supra, (citing Campbell v. Department of Civil Service, 39 N.J. 556, 562 (1963)). Under the standard articulated in Henry, supra, it is clear that the penalty imposed on appellant by the Civil Service Commission was appropriate. Morrison had a substantial history of suspensions over his 17 year career as a police officer. The offenses for which he was suspended included chronic absenteeism, larceny, neglect of duty and insubordination. The last of these suspensions occurred only three and one-half years prior to the present incident and involved a suspension for a period of 30 days with a loss of 20 days vacation. Moreover, as the Commission noted, the charges here were extremely serious. They reflected an unwarranted, arrogant intrusion into the Robinson *161 home at an aberrant hour of the night and reflected poorly on the image of the police as a whole. In sum, although termination of employment is always a very serious penalty and should not be imposed lightly, we cannot say that the penalty imposed was arbitrary, capricious or unreasonable. It was amply supported by substantial credible evidence in the record. Thus, we affirm the Commission's decision in all respects.
Our disposition of the foregoing issues render it unnecessary to address the last argument raised by appellant.
Affirmed.
NOTES
[1] Prior to the departmental hearing, Morrison's counsel moved to have Maurer removed as the hearing officer on the grounds of prejudice. Director Maurer denied this motion. Morrison's counsel renewed this motion at the hearing before the ALJ who similarly denied the motion.