690 A.2d 1130

WALTER WESTER, JR., ET AL., PLAINTIFFS, v. CITY
OF ASBURY PARK, ET AL., DEFENDANTS.

Superior Court of New Jersey
Law Division
Monmouth County

December 11, 1996.

*Eugene M. La Vergne* for Plaintiffs (*Eugene M. La Vergne,* attorney)

*Raymond P. Shebell* for defendant City of Asbury Park (*Shebell & Schibell*, attorneys)

RAYMOND A. HAYSER, J.T.C., temporarily assigned.

This matter arises from the decision of the governing body of the City of Asbury Park to remove plaintiff Commissioners of the City's Housing Authority from their public offices for cause.

Plaintiff Commissioners have served as the legally appointed members of the Authority pursuant to *N.J.S.A.* 40A:12A–17a, and its predecessor statute, *N.J.S.A.* 55:14A–4. On or about October 8, 1993, defendant City Council adopted a resolution charging plaintiff Commissioners with inefficiency and negligence under eight specifications. By further resolution dated November 4, 1993, the City Council appointed a retired Superior Court Judge as "hearing officer" for the charges and specifications.

Thereafter, twenty four separate days of hearings were conducted between December 27, 1993, and August 15, 1994. On September 20, 1994, the hearing officer issued a written report recommending the removal from office of plaintiff Commissioners. At a public meeting on September 29, 1994, the governing body, the City Council, voted in a detailed resolution to accept the recommendations of the hearing officer, and removed plaintiff Commissioners from their public offices. At the same meeting, new or replacement commissioners were appointed. On September 30, 1994, plaintiff Commissioners were notified in writing as to the City Council's actions.

On October 3, 1994, the court entered an order requiring defendants to show cause as to why plaintiff Commissioners should be removed from their public offices, or be reinstated as may be necessary, and declaring the appointment of the replacement Commissioners null and void.[1] On October 4, 1994, the court

---

[1] On the return date of October 18, 1994, the matter was pretried.

entered an order permitting the replacement Commissioners to serve until the further order of the court.

. Effectively, plaintiffs are bringing an action seeking the ancient remedy of quo warranto.[2] The action seeks to clarify the eligible incumbents of the public offices in question. *Pickett v. Harris,* 219 *N.J.Super.* 253, 258–59, 530 *A.2d* 319 (App.Div.1987).

Plaintiffs raise a number of issues in connection with their appeal of the removal actions by the governing body.

■ Plaintiffs initially argue that under *N.J.S.A.* 40A:12A–17e, the governing body is authorized only to remove one Authority member at a time, with separate charging documents and separate hearings. In support of their argument, plaintiffs cite neither statutory nor case law authority, but rather refer only to a "logical reading of the plain wording of the statute." However, to paraphrase Lewis Wallace, logic quite often, like beauty, is "altogether in the eye of the beholder."

Under the statutory framework, *i.e., N.J.S.A.* 40A:12A–1 to 49, a housing authority operates through the voting decisions of its members. The commissioners operate as the policy-making body for an authority. No individual member of an authority exercises paramount responsibility over its business. The commissioners, collectively, decide matters ranging from the establishment of a budget and projects to the hiring, supervision, and firing of an executive director and other employees. Moreover, it is clear from the record before the court that plaintiffs never, at any earlier time, sought to contest the now claimed procedural irregularities. The record fails to disclose any objection to a single hearing procedure or any request for severance. Furthermore,

---

2 Plaintiff Nixon is the Executive Director of the Housing Authority. His personal claims are set forth in the sixth count (defamation) of the amended complaint, which is not the subject of this decision and which matter will continue as a plenary action pursuant to *R.* 4:67–5. He joins in this portion of the action as a citizen and taxpayer of the City of Asbury Park, a status that is not in dispute. *Demoura v. Newark,* 74 *N.J.Super.* 49, 60, 180 *A.2d* 513 (App.Div. 1962).

although they had the opportunity to present evidence, make motions and confront and cross-examine witnesses, they also chose to be represented throughout the earlier and present proceedings by a single attorney. There is no issue as to whether or not plaintiff Commissioners were denied basic constitutional due process rights under the circumstances.[3]

▪ Yet, plaintiffs would argue that under a claimed combined, collective and collaborative duty to properly administer the affairs of the Authority, hearings must be duplicated in an inefficient and costly manner. Plaintiffs, under a strained interpretation of the statutory removal procedure, would require repetitive hearings for the same transactions, or series of transactions, involving the same issues and witnesses. A statute will not be given an absurd, impractical interpretation. *Reisman v. Great Amer. Recreation,* 266 *N.J.Super.* 87, 96, 628 *A.*2d 801 (App.Div.1993). Moreover, no suggestion is even made that individual defendants were denied at the earliest stage the right to present individual exculpating evidence or arguments.

Plaintiffs next argue that the governing body improperly delegated to a "hearing officer" the responsibility to actually hear the charges. Frankly, this argument is somewhat disingenuous. On the one hand, plaintiffs argue that the only hearing should have been conducted before the ultimate removal authority, *i.e.,* the City Council, and, on the other hand, plaintiffs argued in their trial brief, repeated at oral argument, that various members of that same governing body were predisposed to deny them a fair hearing and determination.

However, no prior application was made to the court challenging the procedure utilized. Furthermore, if the governing body had,

---

[3] Plaintiffs argue in a general sense that they were denied certain constitutional protections, particularly under the Fourteenth Amendment and 42 *U.S.C.* § 1983, but provide no specifics as to how they were denied a "fair and impartial hearing [free] from the conflict and taint" under the circumstances to be discussed hereinafter.

indeed, heard the matter itself, then certainly plaintiffs would now be arguing the utter unfairness of that hearing procedure, given the claimed pre-disposition of members of the governing body against plaintiff Commissioners.

The argument would effectively come down to the issue that no one could conduct these hearings on the municipal level and reach a recommendation or decision. Moreover, the Commissioners are not in the classified service, which would entitle or require an appeal to the State Merit System Board. *N.J.S.A.* 11A:3–5.

■ Closely related to this argument, plaintiffs raise the issue that either the involvement of the United States Department of Housing and Urban Development (HUD) in financing authority projects preempts local disciplinary action against members of the Authority, or, that defendant governing body is estopped from undertaking disciplinary action against plaintiff Commissioners due to HUD's role in the provision of public housing in the City of Asbury Park.

The fact is that HUD is not the appointing authority. Each governmental level plays its own corroborative role in this public housing process. HUD has made no decision as to the issue before the court. Therefore, there is no federal action to be reviewed. No state law has been argued to be in conflict with any federal statute or regulation. *Ayers v. Philadelphia Housing Authority,* 908 *F.*2d 1184 (3rd Cir.1990); *Whitaker v. Clementon Housing Authority,* 788 *F.Supp.* 226 (D.N.J.1992); and *Thorpe v. Housing Authority,* 386 *U.S.* 670, 87 *S.Ct.* 1244, 18 *L.Ed.*2d 394 (1967), cited by plaintiff Commissioners, are not relevant to this issue.

■ Indeed, a housing authority is an agency of municipal, state and federal government. *O'Keefe v. Dunn,* 89 *N.J.Super.* 383, 396, 215 *A.*2d 66 (Law Div.1965) *aff'd per curiam,* 47 *N.J.* 210, 219 *A.*2d 872 (1966). However, the municipality's role, as the State's agent, is to carry out, as the sole source of its powers in this area, the obligations set forth in the relevant legislation. Such is the

case when we consider the municipality's role and obligations under *N.J.S.A.* 40A:12A–17e. *City of Paterson v. Housing Auth. of Paterson, et al.,* 96 *N.J.Super.* 394, 404–05, 233 *A.*2d 98 (Law Div.1967).

■ No application, as indicated, was ever made to the court requesting an alternative hearing procedure to that which was followed in this case. In this regard, plaintiff Commissioners did not avail themselves of the judicial remedy discussed in *Ferrari v. Melleby,* 134 *N.J.Super.* 583, 342 *A.*2d 537 (App.Div.1975). However, as the court therein stated, in discussing the appropriateness of designating an alternative "hearing officer" to the normal disciplining authority:

> This right to a fair and impartial hearing transcends appellant's individual rights. The general public must be assured that nobody charged with wrongdoing, even though not criminal in nature, be deprived of his constitutional right to a fair and impartial hearing. Appellate courts in particular are given the supervisory responsibility, which must never be lightly cast aside, to safeguard these fundamental rights and maintain the public's respect.
>
> [*Id.* at 586, 342 *A.*2d 537.] *See also Kelly v. Sterr,* 62 *N.J.* 105, 110, 299 *A.*2d 390 (1973).

In the instant case, defendant governing body, as the ultimate appointing and removal authority, took the necessary action to assure, consistent with its ultimate responsibilities, a hearing that could fairly guarantee plaintiff Commissioners their "fundamental rights and maintain the public's respect." This was accomplished through the utilization of an alternative hearing process and hearing officer. Certainly, defendant governing body had preferred the charges against plaintiff Commissioners. Moreover, plaintiff Commissioners have argued vigorously throughout these proceedings that they could not receive a fair, impartial hearing before defendant governing body.

While it might be argued that it would have been more desirable to have sought a court-appointed hearing officer, no argument has been made previously, and any suggestion now that the hearing officer was biased, partial, corrupted or unduly influenced in any fashion as to the performance of his duties is without merit. The

record reveals that the hearing officer in this case was not a subordinate officer or employee under the administrative control of defendant governing body or its designees. Moreover, the hearing procedures assured plaintiff Commissioners the right to their counsel, to submit evidence, confront their accusers, and cross-examine witnesses.

■ Finally, it is noted that while *N.J.S.A.* 40A:12A–17e requires removal by the appointing authority where required after a fair hearing, nothing requires this hearing to be conducted before the governing body. While an actual hearing before the appointing authority might be the normal rule, *see Ferrari, supra,* 134 *N.J.Super.* at 586, there is nothing in the cited statute, or, more importantly, the circumstances herein, that requires that approach. Furthermore, the statutory framework requires an appropriately liberal and flexible application of the municipal powers under the statutory framework "necessary or convenient to effectuate the purposes of this act." *See N.J.S.A.* 40A:12A–22n.

Therefore, in the opinion of the court, there has been, at the very least, substantial good faith compliance with *N.J.S.A.* 40A:12A–17e under the circumstances here present, in designating a hearing officer for the development of the required record. The plaintiff Commissioners claim in this regard must fail.

■ Plaintiff Commissioners next argue that their removal from public office was a violation of their civil rights, specifically as guaranteed under the Fourteenth Amendment of the United States Constitution. Whatever the status of a voluntary appointed public office as coming within the "liberty" or "property interest" ambit of this constitutional protection (*See* 3 *McQuillin, Municipal Corporations,* 3rd ed. § 12.117 at 549), it is clear from a review of the entire record that plaintiff Commissioners were not denied fundamental due process rights.

Plaintiff Commissioners were presented with written charges as defined under the relevant statute, had a hearing before an impartial officer, which they agreed should be closed to the public,

were represented throughout by counsel, engaged in pre-hearing discovery (including the exchanging of documents and deposing of potential witnesses), and had the opportunity to make motions, the right to submit evidence, raise objections, cross-examine witnesses, and, in other words, participate fully in developing a record.

Plaintiff Commissioners further argue that defendant governing body failed to carry out their own required responsibilities under *N.J.S.A.* 40A:12A–17e.

One basis for this claim, *i.e.*, the delegation of the conduct of a hearing to a hearing officer, has already been discussed. Plaintiff Commissioners further argue that the record undisputedly developed before the hearing officer, was not adequately and fully reviewed by defendant governing body before its decision to remove these plaintiffs from their public offices.

*Matter of Morrison*, 216 *N.J.Super.* 143, 523 *A.2d* 238 (App.Div. 1987) is relevant to the resolution of this issue.[4]

■ In a proceeding such as the present, the court is required to consider not only the fairness of the hearing and the procedural correctness resulting in the removal, but also whether the decision below is supported by substantial credible evidence, or otherwise is not, as the parties agree, "arbitrary, capricious or unreasonable." *Id.* at 160, 523 *A.2d* 238.[5]

---

[4] It should be initially noted that the court in *Morrison* stated that, "It is elementary that if a fair hearing is conducted before a hearing officer, ..., who duly weighs and considers all of the evidence and, consequently, makes findings of fact and recommendations ..., any omnibus rule requiring ... review (of) the entire record in each case would effectively destroy the efficiency achieved through the use of hearing officers. *See* 2 *Am Jur 2d, Administrative Law*, Sec. 439 at 248–249." *Morrison*, 216 *N.J.Super.* at 155, 523 *A.2d* 238.

[5] In disciplining actions involving public officers or employees, the standard of judicial review, unburdened by deference to presumptions under legislative judgment or quasi-judicial expertise, is one of substantial justice. Moreover, circumstances can, indeed, arise when the trial court must make independent findings after reviewing the facts, as the interest of justice may require. Howev-

It is clear that the record is established in twenty four hearing sessions before the designated hearing officer. However, plaintiff Commissioners argue that defendant governing body was required, but could not have reviewed the expansive record, including extensive transcripts and substantial documents, between the time the hearing officer issued his decision on September 20, 1994, and the removal vote on September 29, 1994.

In *Morrison*, similar to the claim in the present case, the court was faced with the issue as to whether the failure of the removal agency to review the transcript of the hearing before the hearing officer rendered its ultimate decision void. Citing the seminal case of *Morgan v. United States*, 298 *U.S.* 468, 56 *S.Ct.* 906, 80 L.Ed. 1288 (1936) ("the one who decides must hear"), nevertheless, the court held that the required action "has been construed by numerous courts and commentators to mean that the deciding officer need not personally read the entire record or transcript, but rather that he need only 'consider and appraise' and personally understand the evidence contained in the record (citations omitted)." *Morrison, supra,* 216 *N.J.Super.* at 155, 523 *A.*2d 238. In the final analysis, the requirement goes to a substantial understanding of the record and not to the mechanics by which that understanding is developed or achieved. As the *Morrison* Court further stated, the decision maker "is required merely to give the (hearing officer's) recommendations 'attentive consideration' which may be accomplished through responsible delegation (citation omitted)." *Id.* at 158.

In the instant case, the problems of the Asbury Park Housing Authority were not unknown to defendant governing body, as evidenced in its charging resolution of October 8, 1993, setting forth the eight areas of inquiry for the hearing officer. This was not a situation where the removal agency was remote, unfamiliar

er, as the court has determined, those circumstances do not exist in this matter. *See Connelly v. Jersey City Housing Authority*, 63 *N.J.Super.* 424, 429, 164 A.2d 806 (App.Div.1960) (close judicial scrutiny required where removal authority was "judge and jury ... [and] the only witnesses....")

and removed from actual knowledge of the local conditions. Indeed, plaintiffs would argue defendant governing body was too close to the situation. Nor was this a situation involving the disciplining of a low rank municipal employee whose foibles, as well as successes, would only be known in obscure intra-departmental dealings.

Moreover, as the trial certification of the City Attorney states, the transcripts and exhibits were maintained at City Hall and were available for review and inspection by defendant governing body. The fifteen-page report of the hearing officer, not cursory in nature, contained not only detailed responses to the charges obviously known to or submitted by the governing body, but also contained detailed summaries of specific testimony relied upon in reaching his conclusions. Finally, the removal resolution of September 29, 1994, also evidences knowledge of hearing testimony.

■ However, in the final analysis, even if transcripts and documents were not reviewed, in any respect, and that is argued was error, or, like the situation in *Morrison*, were not available to the removal agency, they have been supplied to the court. Having undertaken a full independent review of this record, the court has concluded that the ultimate action of removal was, indeed, "amply supported by substantial credible evidence," and was not "arbitrary, capricious or unreasonable." *Morrison, supra,* 216 *N.J.Super.* at 160, 523 *A.2d* 238.

The court has undertaken this extensive review of the record, satisfied that a fair hearing before an impartial hearing officer was conducted, and mindful that a remand for further and perhaps a more thorough review of the record by defendant governing body would be meaningless, as plaintiffs would argue, or needless, as defendants would argue. Further delay, uncertainty and expense would result, and no proper interests of the parties would be served by such a remand.

As stated, in the court's opinion, the evidence reasonably supports the removal action that was ultimately taken.

*N.J.S.A.* 40A:12A–17d, like its predecessor, *N.J.S.A.* 55:14A–6, provides that the "powers of the authority shall be vested in the members thereof." Those powers are substantial. *See, e.g.,* *N.J.S.A.* 40A:12A–16 and 22. Its activities require close attention by the Commissioner members to achieve the important legislative goals as set forth in *N.J.S.A.* 40A:12A–2a.

Unfortunately for plaintiff Commissioners and, more importantly, the people in need of their quality public service, the record as developed by the hearing officer amply demonstrates governing mismanagement through indifference, inattention, blanket unsupervised delegation or inability to appreciate the role of requiring accountability and performance. A public office, even uncompensated under the law, is more than just a title or honor. It is the depository of the hopes and concerns of the community and the people in need to be served. Tested against this criteria, as the hearing officer found and defendant governing body affirmed, plaintiff Commissioners were found wanton.

It is of little comfort to those who depended upon their appropriate performance that the Commissioners, any one or all, did not intend for the Authority to come to its present condition. Plaintiff Commissioners bear collective responsibility for the sad state of affairs reflected in the record. The evidence is overwhelming that they were unable or unwilling to control and supervise employees or resolve inherent problems under their stewardship. The record, with its findings of neglect, moreover, cannot lead the court to conclude that the removal penalty imposed, as recommended by the hearing officer, was arbitrary, capricious or unreasonable, or warrants a lesser penalty. "It was amply supported by credible evidence in the record." *Morrison, supra,* 216 *N.J.Super.* at 161, 523 *A.*2d 238.[6]

---

[6] In view of the court's independent review and the conclusions reached, it is not necessary to extensively address a number of other issues raised by plaintiff Commissioners, including a claimed conflict of interest involving the City Attorney (serving as prosecutor and subsequently legal adviser to defendant governing body), the participation and voting by two members of defendant governing body

Finally, plaintiffs' abbreviated comment in footnote three of their trial brief that "it appears that two of the 'new' Commissioners are also City employees in violation of statutory law," is not ripe for resolution in these proceedings. The issue was not raised in the complaint, amended complaint or pretrial order. Fairness requires that those unnamed "City employees" should have the opportunity, under proper notice, to address this issue as it applies to their independent right to claim their offices, and not as usurpers against plaintiff Commissioners.[7]

The decision of defendant governing body removing plaintiff Commissioners, based upon the record developed before the hearing officer, is affirmed. The conclusion below was supported by substantial credible evidence and was not arbitrary, capricious or unreasonable.

Counsel for defendants shall submit a proposed Order pursuant to *R.* 4:42–1(c), dismissing with prejudice the first through fifth counts of the amended verified complaint.

---

claimed in conflict, or the failure to give a *"Rice"* notice to persons whose "employment" was to be discussed under the *Open Public Meetings Act, N.J.S.A.* 10:4–6 to 21. *Rice v. Union County Regional High School Bd. of Ed.*, 155 *N.J.Super.* 64, 382 *A.2d* 386 (App.Div.1977) and *N.J.S.A.* 10:4–12b(8). The court is satisfied that the claimed conflicts or irregularities, if conflicts or irregularities at all, surrounding the final action taken, are without merit in overcoming or tainting the substantive record warranting the ultimate removal action.

Finally, since the court has been advised that plaintiff Shiel, an appointee of the Commissioner of Community Affairs pursuant to *N.J.S.A.* 40A:12A–17a, has been replaced by the Commissioner, the court need not address the issue as to whether defendant governing body could remove him from his office or only, at best, recommend such action to the Commissioner, under the language of *N.J.S.A.* 40A:12A–17e, providing that such an official "may be removed by the governing body or officer by which he was appointed."

[7] The court does bring to the parties' attention, however, the apparent statutory distinction between a housing authority created and existing under *N.J.S.A.* 40A:12A–17a, or its predecessor statute, *N.J.S.A.* 55:14A–4, which may be additionally authorized to act as a redevelopment entity under *N.J.S.A.* 40A:12A–21, and a redevelopment agency created and existing pursuant to *N.J.S.A.* 40A:12A–11.