DONALD ROWLEY, PETITIONER-APPELLANT, v. BOARD OF EDUCATION OF THE MANALAPAN-ENGLISHTOWN REGIONAL SCHOOL DISTRICT, RESPONDENT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 1, 1985—Decided October 23, 1985.

Before Judges PRESSLER, DREIER and BILDER.

*Thomas W. Cavanagh, Jr.* argued the cause for appellant (*Chamlin, Schottland, Rosen, Cavanagh & Uliano,* attorneys; *Thomas W. Cavanagh* and *Jay R. Schmerler,* on the brief).

*Gerald L. Dorf* argued the cause for respondent Board of Education of the Manalapan-Englishtown Regional School District (*Dawes & Brown,* attorneys; *Sanford D. Brown,* on the brief).

*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney for respondent State Board of Education (*Alfred E. Ramey, Jr.,* Deputy Attorney General, on the statement in lieu of brief).

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

Donald Rowley, a tenured teacher employed by the Board of Education of the Manalapan-Englishtown Regional School Dis-

trict, appeals from a decision of the State Board of Education directing his dismissal on the grounds of inefficiency. In so doing, the State Board rejected the determination of the Commissioner of Education dismissing the charges against Rowley on procedural grounds and itself addressed *de novo* the substance of the charge, concluding that the allegations of inefficiency had been proved. The State Board reached this conclusion without, however, making any findings of fact, without having reviewed the transcript of the lengthy hearing conducted by the administrative law judge, and without the benefit of any findings of fact by either the administrative law judge or the Commissioner, neither of whom had reached the merits of the substantive issue. We reverse and remand.

Rowley, a fourth-grade teacher, was regularly employed by the local board since 1962. Although the record is not clear as to when his teaching difficulties began, it is at least beyond dispute that routine evaluation of his performance during the 1980–1981 school year led to the administrative decision that his teaching was inadequate to qualify him for the usual salary increment for the following year. Rowley's performance was closely monitored during the first half of the 1981–1982 academic year. Eight evaluations were made of his classroom teaching between October 1981 and February 1982, three by then acting superintendent of schools, Joseph Scozzari, who was appointed to the superintendent's post in July 1982; two by Thomas W. McNearney, Rowley's vice-principal; one by Glen Allen Palmer, a mathematics and science supervisor employed by the district; one by Esther Harris, a language arts and instructional supervisor employed by the district; and one by Jeffrey Klein, an assistant superintendent.

The evaluation technique began with the evaluator's observation of the teacher in the classroom for about an hour. The evaluator then filled in a questionnaire requiring a rating of 30 specified characteristics of proper teaching, divided into six major categories. The available ratings were "observed in lesson," "observed in lesson but needs improvement," "should

have been in lesson, but not demonstrated," and "not applicable to lesson observed." The description of the individual characteristics is, by and large, expressed in general terms. A composite of the eight evaluations shows that as to fourteen of the separate characteristics, Rowley's performance was rated acceptable by at least half the evaluators. As to three others, at least half of the evaluators either rated the performance as acceptable or the characteristic as not applicable to the lesson observed. Of the remaining thirteen characteristics, all evaluations concurred in rating Rowley as needing improvement in only one area, namely, meeting "the individual needs of students within the class." As to the rest, there was a divergence of opinion among the evaluators, the majority of them having rated the performance as needing improvement. In no case did a majority rate any required characteristic as altogether absent from the lesson. Each of the evaluation forms was, moreover, supplemented by a narrative critique, giving further specification respecting the observed deficiency as well as specific recommendations for improving performance. These critiques were not altogether consistent with each other, although patterns of some specific deficiencies did emerge, including a perceived overreliance by the teacher on textbook materials, uninteresting presentation of the lesson, the failure to group the pupils homogeneously in subject areas where the class as a whole showed wide divergence in individual ability, the failure to assure that homework had been done, and the failure to grade homework. Finally, it appears that there were a number of discussions between Rowley and his supervisors during this period, including weekly conferences with the acting superintendent, respecting the deficiencies in his performance and techniques for improving it.

Following this intensive evaluation period, the acting superintendent, on March 11, 1982, filed with the local board written inefficiency charges against Rowley, alleging that he had "failed" properly to perform in 14 of the designated areas and "needs improvement" in another five. The filing of these

charges invoked the 90-day period provided for by *N.J.S.A.* 18A:6–11 during which the teacher is afforded the opportunity to overcome his deficiencies.

During the ensuing 90-day period, Rowley was evaluated five times, once each by McNearney, Klein and Harris, each of whom had evaluated him earlier in the school year; once by Robert Hagler, Rowley's new principal; and once by Robert Weiner, the district's curriculum supervisor. Each evaluation report included a written critique and series of recommendations and was followed by a post-evaluation conference between Rowley and the evaluator.

Based on those evaluations, the acting superintendent concluded that Rowley had failed to overcome his inefficiency and in June, 1982, served him with notice of the continued prosecution of the charges. On June 24, 1982, the local board voted to certify the charges to the Commissioner of Education who, in turn, referred the matter to the Office of Administrative Law for further proceedings as a contested case.

After seven days of hearings, the administrative law judge issued an initial decision recommending dismissal of the charges because of the local board's failure to comply with the statutory mandate of *N.J.S.A.* 18A:6–11. He did not address the substance of the board's charges and made no findings of fact with respect thereto. The Commissioner concurred. On appeal to the State Board, the Board accepted the contrary view of its legal committee, which had concluded that the documentary evidence, which included the 13 evaluation reports, not only demonstrated the local board's compliance with the statute but also justified Rowley's dismissal.

The threshold issue before us is the proper interpretation and application of *N.J.S.A.* 18A:6–11, amended by *L.* 1975, *c.* 304, which governs local board procedures in initiating good cause charges against tenured teachers. That statute provides, in pertinent part,

\* \* \* that if the charge is inefficiency, prior to making its determination as to certification, the board shall provide the employee with written notice of the alleged inefficiency, specifying the nature thereto, and allow at least 90 days in which to correct and overcome the inefficiency.

The administrative law judge and the Commissioner were both of the view that compliance by the local board with its obligation to afford the teacher the 90-day correction period constitutes an absolute prerequisite to its right to certify charges against the teacher and, consequently, that a failure of compliance compels dismissal of the charges. The State Board apparently concurred in this reading. Nor was there any conceptual disagreement between the State Board and the Commissioner respecting the manner in which the local board is required to comply with the 90-day mandate. Their dispute was only as to whether there had in fact been the requisite compliance.

The courts of this state have not yet been called upon to interpret the 90-day provision of *N.J.S.A.* 18A:6–11 in a reported opinion. The Department of Education has, however, developed a clear standard for local board compliance beginning with its 1977 promulgation of written guidelines which it issued to all local boards, superintendents and administrative principals. *See* Guidelines for Implementation of the Tenure Employees Hearing Law, Department of Education, Division of Controversies and Disputes (May 3, 1977). Section IIB4 of the Guidelines provides that

During the aforementioned 90 day period, members of the administrative/supervisory staff should make reasonable efforts to provide assistance to the teaching staff member to overcome the specific inefficiencies.

As he explained in his decision in this action, the Commissioner of Education has consistently construed the statutory mandate in the light of this guideline, concluding that "if a board chooses to file tenure charges of inefficiency against any teacher, the administration bears the heavy responsibility to render positive assistance to the teacher in an effort to overcome his inefficiencies." *See also In The Matter of The Tenure Hearing of Ethel P. Hogue v. Teaneck School Dist., Bergen Cty.,* 12–83 *S.L.D.* (January 13, 1983); *In The Matter of The Tenure*

*Hearing of Franklin Johnson, Sch. Dist. of the Tp. of Cherry Hill, Camden Cty.*, 239–81 *S.L.D.* (July 2, 1981). The State Board, concurring with this view of the Commissioner, noted that

It is now settled that, under *N.J.S.A.* 18A:6–11, a local board of education is duty bound to assist a tenured teaching staff member, against whom it has filed charges of inefficiency, in improving his teaching performance before removing him from his teaching position. * * * The rationale underlying this rule is that a teacher whose teaching effectiveness is called into question after years of meritorious service in a school district should, in recognition of that contribution, be afforded an opportunity to demonstrate that he is still capable of effective teaching. He can only avail himself of that opportunity if he understands clearly the basis for the criticism supporting the allegations of inefficiency and is offered constructive advice as to how he might restore his teaching skills.

As the State Board concluded, what is required is "a cohesiveness of effort before and after the filing of charges that enables the Board ultimately to measure a teacher's improvement by a synthesis of observations." The disagreement between the Commissioner and the State Board in this case was only as to whether or not the local board had provided the required assistance.

 We are persuaded that the Department of Education's construction of the statutory 90-day provision is consistent with the statutory language, consonant with legislative purpose, provides necessary safeguards for the teacher and imposes no undue burden on the local board or the public interest. While we are not bound by an agency's interpretation of a statute within its administrative and enforcement jurisdiction, nevertheless, that interpretation is entitled to great weight. *See, e.g., In re Bridgewater Tp.*, 95 *N.J.* 235, 244–245 (1984); *Appleby v. Civil Service Com'n*, 190 *N.J.Super.* 249, 255 (App.Div.1983); *Infocomp Corporation v. Somerset Trust Company*, 165 *N.J. Super.* 382, 391 (App.Div.1979). For the reasons we have already stated, we are content to defer to the Department's interpretation here. We are therefore guided by that interpretation in considering the divergent views of the Commissioner

and the State Board as to whether or not the local board here complied with its statutory obligation.

As we have noted, the administrative law judge had before him not only the documentary evidence of all the pertinent evaluations but the testimony of most of the evaluators and of the teacher as well. Having heard all of this testimony and juxtaposing it against the evaluation forms, it was his observation that "after the hearing I had a much greater sense of the problem respondent faced in meeting the charges filed with the board against him." That juxtaposition led him to conclude that the local board had failed to give the teacher the benefit of meaningful assistance as required by the statute. He pointed out that when an inefficiency charge is initiated

> * * * the teacher must have some yardstick against which he/she is measured during the [90-day] improvement period. In effect, the teacher must be told precisely about the alleged inefficiencies, so that he/she has a reasonable opportunity to correct them by the end of the improvement period.

He thus concluded that

> If, as alleged, respondent began floundering in the performance of his teaching after years of good service, causing the filing of charges of inefficiency by the Superintendent, then the Board's supervisors were duty-bound to assist him during his improvement period. As stated before, they did not.
>
> Their observations concluded with five independent evaluations by five different supervisors which were unrelated to the charges filed against respondent. Further, there was no effort by the supervisors to synthesize or incorporate their evaluations with respondent's alleged inefficiencies. In short, the evaluations had little or no relationship to the task which is required by regulation and decision law, *i.e.*, to assist respondent in improving his classroom instruction.

The Commissioner expressly concurred, noting also that "although respondent was observed by five different evaluators, their testimony reveals that not one of them used the charges filed by the Board as a cross-reference or as evaluative criteria during their observations of respondent." Accordingly the Commissioner accepted the administrative law judge's recommendation that the charges be dismissed because of noncompliance with *N.J.S.A.* 18A:6–11.

The State Board, on appeal to it by the local board, did not have before it the transcripts of the hearings conducted by the administrative law judge. It relied, as we have noted, on the documentary evidence which included the written evaluations. Its conclusion was that the five evaluators' written critiques and individual post-evaluation conferences with the teacher satisfied the local board's obligation to accord meaningful assistance during the 90-day period.

If the record in this action had consisted only of the documentary evidence, we might well have been required to defer to the State Board's view of it since that view does not constitute a facially unreasonable reading of that evidence. The problem, however, is that the documentary evidence, read in the context of the testimony of the evaluators and the teacher, also supports the contrary reading by the administrative law judge and the Commissioner. It is axiomatic that fundamental concepts of administrative due process require that the basis of agency action be spelled out by specific findings of fact supported by the record as a whole. A necessary corollary of this principle is that the ultimate finder of fact must read and consider all of the evidence presented. *See In re Shelton College,* 109 *N.J.Super,* 488, 492 (App.Div.1970). The failure of the State Board to have considered the hearing transcript renders its determination a nullity. Thus, had the State Board reached its conclusion based on the full record and had it tested the findings of the administrative law judge and the Commissioner against the full record, we would have been required to defer to its contrary findings if reasonably supported thereby. Findings made, however, on the basis of a partial record and without regard to any of the testimony are obviously not entitled to any deference at all.

We are nevertheless persuaded that since consideration of the full record could support a finding that the Board's assistance during the 90-day period was adequate and since agency

expertise is necessarily involved in making that determination, we must remand to the State Board for its reconsideration of the threshold question of whether the local board properly complied with the statutory provision respecting the 90-day correction period. *See, e.g., Dougherty v. Human Services Dep't,* 91 *N.J.* 1 (1982). If the State Board, on the basis of the full record, should agree with the findings of the administrative law judge as concurred in by the Commissioner, then obviously that will be the end of the matter, the charges against Rowley will have to be dismissed, and the local board will remain free to initiate any new proceeding against the teacher it deems appropriate.

▮▮▮▮ If on the other hand the State Board concludes, on the basis of the full record and by findings of fact supported thereby, that the local board did comply with *N.J.S.A.* 18A:6–11, we are satisfied that it must remand to the administrative law judge for an initial decision which addresses the substance of the charge. The State Board's conclusion that the local board had sustained its burden of proving Rowley's inefficiency is defective not only by reason of its failure to have considered the hearing transcript but also because it made no findings of fact in support thereof. The attorney general indeed concedes that "in the absence of additional factfinding on the record or an initial decision on the merits by the [administrative law judge], the question of whether the charges of inefficiency had been sustained should not have been reached." We concur. We are further satisfied that the orderly function of the administrative process requires the meritorious question to be first addressed by the administrative law judge and then reviewed by the Commissioner. Any party dissatisfied with the Commissioner's decision may then appeal to the State Board.

Reversed and remanded to the State Department of Education for further proceedings consistent herewith.