NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0857-13T2
                       A-1012-13T2


FELICIA PUGLIESE,

       Plaintiff-Appellant,

v.

STATE-OPERATED SCHOOL DISTRICT
OF THE CITY OF NEWARK,

       Defendant-Respondent.

_____

EDGARD CHAVEZ,

       Plaintiff-Appellant,

v.

STATE-OPERATED SCHOOL DISTRICT
OF THE CITY OF NEWARK,

       Defendant-Respondent.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **May 19, 2015** |
| **APPELLATE DIVISION** |

       Argued March 17, 2015 — Decided May 19, 2015

       Before Judges Koblitz, Haas and Higbee.

       On appeal from Superior Court of New Jersey,
       Chancery Division, Essex County, Docket Nos.
       C-84-13 and C-98-13.

       Richard A. Friedman argued the cause for
       appellant Felicia Pugliese (Zazzali,
       Fagella, Nowak, Kleinbaum & Friedman,
       attorneys; Mr. Friedman, of counsel and on

the brief; Marissa A. McAleer, on the brief).

Jason E. Sokolowski argued the cause for appellant Edgard Chavez (Zazzali, Fagella, Nowak, Kleinbaum & Friedman, attorneys; Mr. Sokolowski, of counsel and on the brief).

Brenda C. Liss argued the cause for respondent (Riker Danzig Scherer Hyland & Perretti, attorneys; Ms. Liss, of counsel and on the brief; John Atkin, on the brief).

The opinion of the court was delivered by

KOBLITZ, J.A.D.

In these appeals from termination, which we consolidate for the purposes of this opinion, tenured teachers Felicia Pugliese and Edgard Chavez assert that their legal defenses were not considered by the Commissioner of Education, the arbitrator hearing the case, or the trial court. We reverse and remand to the Commissioner to explicitly decide those legal defenses that the Commissioner does not expressly delegate to the statutorily-mandated arbitrator to decide. The Commissioner must also inform the arbitrator what legal standards to utilize, after which the arbitrators must review the facts anew within this legal framework.

We first discuss the factual situation of each teacher. We then review the common statutes that apply to both matters, and the reasons why we are compelled to remand to the agency to

2

determine in the first instance those issues implicating policy considerations and statutory interpretation in the educational context.

## The Chavez matter

At the time of the arbitrator's decision in February 2013, Chavez had been employed by defendant, the State-operated school district of the City of Newark,[1] or its predecessor the Board of Education of Newark, for approximately twenty years, eighteen of which were spent successfully teaching math and other subjects in the adult education/GED[2] program. In August 2010, after that program was cancelled, Chavez was assigned to teach sixth grade math using a math curriculum he had not previously taught. Chavez holds an Instruction Certificate with an Elementary Teacher (K-8) endorsement and has passed the National Teacher's Examination in math.

The school principal anticipated that it would take a few months for Chavez to transition to teaching sixth graders. Over

---

[1] As permitted by the then-applicable provisions of the Public School Education Act of 1975, L. 1975, c. 212, § 15 as amended by L. 1987, c. 398, § 3, in 1995, the State Board of Education authorized the removal of the Newark Board of Education and the creation of a State-operated school district after a determination that Newark's students were not being provided a thorough and efficient system of education. Contini v. Bd. of Educ. of Newark, 286 N.J. Super. 106, 112-14 (App. Div. 1995), certif. denied, 145 N.J. 372 (1996).

[2] "GED" is the abbreviation for General Educational Development.

the course of the next two school years, Chavez was provided with numerous teaching supports, including ongoing in-class assistance from a technology coordinator during the first year and a math coach for both years, as well as help from the vice principal to assist him in modifying the behavior of disruptive children in his class.

In spite of the ongoing support provided, Chavez was unable to adjust satisfactorily to the change in teaching assignment. He received negative memoranda from school administrators, including letters of reprimand and a letter of warning concerning his lack of classroom management skills, setting forth two incidents where he failed to follow proper reporting procedures when students were injured in his classroom.

During this two-year time period, teachers were evaluated using a scale in which they were rated either "distinguished," "proficient," "basic," or "unsatisfactory." For the school years 2010-2011 and 2011-2012, despite the ongoing support and feedback, Chavez received a rating of "basic" and "unsatisfactory," respectively.

In March 2012, Chavez was notified that defendant intended to file tenure inefficiency charges, and he was given a ninety-day improvement plan, as required by the then-existing provision in N.J.S.A. 18A:6-11. After Chavez failed to demonstrate

improvement, tenure charges were filed in July and certified by the Commissioner of Education in September 2012.

At the subsequent arbitration hearing, undertaken pursuant to the recently enacted Teacher Effectiveness and Accountability for the Children of New Jersey Act (TEACHNJ), the arbitrator based his review on whether defendant's findings were true, reasoning that 1) matters were referred to arbitration only after the Commissioner of Education reviewed the tenure charges and deemed them sufficient, if true, to warrant dismissal; and 2) TEACHNJ arbitration review criteria were inapplicable because they were based on a new teacher evaluation rubric that had not yet been implemented. By statute, the new evaluation rubric was to be adopted by December 31, 2012 and implemented in the 2013-2014 school year. Looking at the factual merits of the case, the arbitrator noted that defense witnesses were credible, "extraordinary efforts" had been undertaken to help Chavez succeed, and no animus was directed toward him by defendant. Chavez's discharge was sustained.

At the subsequent appeal to the trial court, Chavez argued that the arbitrator "violated the law by not reviewing or even considering" his legal defenses. The trial court upheld the arbitrator's decision, finding that the arbitrator correctly analyzed which provisions of TEACHNJ he was to apply. The trial

court also found "substantial evidence"[3] in the record, and that it was "reasonably debatable"[4] that the arbitrator had fulfilled his task to decide whether or not the tenure charges were appropriate and true.

## The Pugliese matter

Pugliese also seeks reversal of the same trial court's September 2013 confirmation of a different arbitrator's decision in which she was dismissed from her tenured teaching position. Pugliese was employed by defendant from 2004-2013. She has an undergraduate degree in sociology and a master's degree as a reading specialist. She holds an elementary certification and is "highly qualified" to teach language arts literacy. Beginning in the school year 2010-2011, Pugliese was reassigned from teaching reading to small groups of students to teaching large social studies classes for grades five through eight.

---

[3] See Div. 540, Amalgamated Transit Union v. Mercer Cnty. Improvement Auth., 76 N.J. 245, 253-54 (1978) (stating that when "the arbitration process is compulsory, . . . judicial review should extend to consideration of whether the award is supported by substantial credible evidence present in the record.").

[4] In Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276-77 (2010), our Supreme Court stated: "In the public sector, an arbitrator's award will be confirmed 'so long as the award is reasonably debatable.'" (quoting Middletown Twp. PBA Local 124 v. Twp. of Middletown, 193 N.J. 1, 11 (2007)) (citations and internal quotation marks omitted)). Arbitration there was required by the parties' collective bargaining agreement, id. at 272, and differs from the arbitration here, which is statutorily required pursuant to TEACHNJ.

A-0857-13T2

As with Chavez, at the time of her reassignment, teachers were evaluated using a scale in which they were rated either "distinguished," "proficient," "basic," or "unsatisfactory." For the school years 2010-2011 and 2011-2012, Pugliese received a rating of "basic" and "unsatisfactory," respectively. Pugliese received services to help rectify identified problems, but did not improve. In addition, numerous memoranda, some pre-dating her reassignment, chronicled ongoing classroom management issues.

In March 2012, tenure charges alleging inefficiency were filed against her. In her answer, Pugliese asserted that defendant could not claim that she was inefficient in a position defendant illegally required her to hold. She argued it was illegal because she was not "highly qualified" to teach social studies.

At the subsequent arbitration hearing, the arbitrator concluded that defendant had demonstrated a valid educational framework for the evaluations and the absence of personal animus or improper bias in making them. He further concluded that teaching social studies fell within the scope of Pugliese's licensure. He determined that she satisfied the criteria for being highly qualified, as defined by federal statute, and that her shortcomings were related to her inability to control a

7

classroom and create level-appropriate lesson plans, rather than a lack of substantive knowledge. Pugliese appealed the arbitrator's decision.

The trial court upheld the arbitrator's decision, stating that there was substantial evidence to support the arbitrator's decision that Pugliese was capable of teaching social studies. The court stated that just because she was teaching a subject in which she claimed to not be highly qualified did "not render the arbitrator's decision illegal or contrary to public policy."

### General law

The No Child Left Behind Act (NCLB), 20 U.S.C.A. § 6301 to -7941,

> reflects Congress' judgment that the best way to raise the level of education nationwide is by granting state and local officials flexibility to develop and implement educational programs that address local needs, while holding them accountable for the results. NCLB implements this approach by requiring States receiving federal funds to define performance standards and to make regular assessments of progress toward the attainment of those standards.
>
> [Horne v. Flores, 557 U.S. 433, 461, 129 S. Ct. 2579, 2601, 174 L. Ed. 2d 406, 428 (2009) (citing 20 U.S.C.A. § 6311(b)(2)).]

"[E]ach State educational agency receiving assistance . . . shall develop a plan to ensure that all teachers teaching in core academic subjects . . . are highly qualified not later than

the end of the 2005-2006 school year."  20 U.S.C.A. § 6319(a)(2).  "The term 'core academic subjects' means English, reading or language arts, mathematics, science, foreign languages, civics and government, economics, arts, history, and geography."  20 U.S.C.A. § 7801(11).  A state receiving federal funds is required to report annually "the professional qualifications of teachers in the State . . .  and the percentage of classes in the State not taught by highly qualified teachers . . . ."  20 U.S.C.A. § 6311(h)(1)(C)(viii).  If a states fails to meet any of the requirements of the Act, "then the Secretary may withhold funds  . . . until the Secretary determines that the State has fulfilled those requirements."  20 U.S.C.A. § 6311(g)(2) (emphasis added).

TEACHNJ was enacted in August 2012.  Its goal "is to raise student achievement by improving instruction through the adoption of evaluations that provide specific feedback to educators . . . ."  N.J.S.A. 18A:6-118(a).  The Legislature declared: "Changing the current evaluation system to focus on improved student outcomes . . . is critical to improving teacher effectiveness, raising student achievement, and meeting the objectives of the federal '[NCLB] of 2001'[.]"  N.J.S.A. 18A:6-118(b).

A key provision of TEACHNJ, N.J.S.A. 18A:6-123, pertains to the creation, review and approval of evaluation rubrics for teachers, principals, assistant principals, and vice-principals. "The State Board of Education shall promulgate regulations pursuant to the 'Administrative Procedure Act[]' . . . to set standards for the approval of evaluation rubrics. . . ." N.J.S.A. 18A:6-123(b). Among the "minimum" standards identified was that each educator was to be rated as "ineffective," "partially effective," "effective" or "highly effective." N.J.S.A. 18A:6-123(b)(1). "A board of education shall adopt a rubric approved by the commissioner [of education] by December 31, 2012." N.J.S.A. 18A:6-123(c). By "January 31, 2013, a board of education shall implement a pilot program to test and refine the evaluation rubric." N.J.S.A. 18A:6-123(d). "Beginning with the 2013-2014 school year, a board of education shall ensure implementation of the approved, adopted evaluation rubric for all educators in all . . . schools in the district." N.J.S.A. 18A:6-123(e). "The commissioner shall establish a model evaluation rubric that may be utilized by a school district to assess the effectiveness of its teaching staff members." N.J.S.A. 18A:6-123(f).

The following procedures are contained within the Tenure Employees Hearing Law, N.J.S.A. 18A:6-10 to -18.1. A tenured

teacher shall not "be dismissed or reduced in compensation . . . except for inefficiency, incapacity, unbecoming conduct, or other just cause, and then only after a hearing . . . ." N.J.S.A. 18A:6-10. Any charge against a tenured employee "shall be filed with the secretary of the board [of education] in writing, and a written statement of evidence under oath to support such a charge shall be presented . . . ." N.J.S.A. 18A:6-11. If "the board finds that such probable cause exists and that the charge, if credited, is sufficient to warrant a dismissal . . . then it shall forward such written charge to the commissioner for a hearing pursuant to N.J.S.[A.] 18A:6-16, together with a certificate of such determination." Ibid. TEACHNJ amended N.J.S.A. 18A:6-11 by eliminating a requirement that an employee be given ninety days in which to correct or overcome the alleged efficiency, prior to the board "making its determination as to certification . . . ." L. 1967, c. 271 as amended by L. 1975, c. 304, § 1, as amended by L. 2012, c. 26, § 5.

Importantly, pursuant to the amendment contained in TEACHNJ, if the commissioner determines that the charge is sufficient to warrant dismissal, the case is referred to an arbitrator. N.J.S.A. 18A:6-16. "The Commissioner of Education shall maintain a panel of [twenty-five] permanent arbitrators to

hear matters pursuant to N.J.S.[A.] 18A:6-16." N.J.S.A. 18A:6-17.1(a). Pursuant to TEACHNJ, if the matter before the arbitrator is employee inefficiency, then four factors shall be considered by the arbitrator in rendering a decision:

> [W]hether or not:
>
> (1) the employee's evaluation failed to adhere substantially to the evaluation process, including, but not limited to providing a corrective action plan;
>
> (2) there is a mistake of fact in the evaluation;
>
> (3) the charges would not have been brought but for considerations of political affiliation, nepotism, union activity, discrimination as prohibited by State or federal law, or other conduct prohibited by State or federal law; or
>
> (4) the district's actions were arbitrary and capricious.
>
> [N.J.S.A. 18A:6-17.2. (emphasis added.)]

Pursuant to TEACHNJ, the arbitrator must therefore determine if the evaluation adhered to the evaluation process, and provided the corrective action plan. To accomplish this task, the arbitrator must first identify the proper evaluation process.

"The arbitrator's determination shall be final and binding and may not be appealable to the commissioner or the State Board of Education. The determination shall be subject to judicial review and enforcement as provided pursuant to N.J.S.[A.] 2A:24-

7 through N.J.S.[A.] 2A:24-10." N.J.S.A. 18A:6-17.1(e) (emphasis added). A reviewing court may vacate an arbitration award due to corruption, fraud, undue means, partiality or misconduct, or if the arbitrators "so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made." N.J.S.A. 2A:24-8.

Prior to its amendment in 2012 pursuant to TEACHNJ, N.J.S.A. 18A:6-16 had stated that if the commissioner determined that charges, if sufficient, warranted dismissal, the matter was referred to an administrative law judge (ALJ). L. 1967, c. 271, as amended by L. 1998, c. 42, §2. The ALJ issued a recommended decision, which the commissioner could adopt, modify or reject. N.J.S.A. 52:14B-10(c). Thus, the agency, using its expertise, reviewed the ALJ's decision. Thereafter, an agency determination could be appealed directly to the Appellate Division. N.J.S.A. 18A:6-9.1(a). Pursuant to TEACHNJ, the agency review process no longer exists.

### Arbitrators apply different standards

The performance evaluations for both Chavez and Pugliese took place prior to the enactment of TEACHNJ, using evaluation rubrics in place at that time as well as a rating scale that was superseded by TEACHNJ. Their tenure charges, however, were filed after TEACHNJ's enactment. An arbitrator's determination

as to what evaluation process should apply in such a situation is a question of statutory interpretation. The two arbitrators here interpreted the statutes differently.

The Chavez arbitrator stated that the case presented two issues: one procedural and one related to the underlying merits of the charges. The Chavez arbitrator framed the procedural issue by stating that there needed to be "a determination of the appropriate processes and standards to apply . . . given that[:](a) the underlying facts occurred prior to the effective date of . . . [TEACHNJ][;] and b) the referral of the matter [to arbitration] occurred after the effective date of [TEACHNJ]." Chavez had argued that his case should be decided under the standards and procedures that preexisted TEACHNJ, because TEACHNJ specified four factors that an arbitrator shall consider when evaluating inefficiency charges, but did so in the context of a yet-to-be determined evaluation rubric in which the educator was to be rated using newly established designations.

The Chavez arbitrator analyzed TEACHNJ, in which a charge of inefficiency may be filed whenever an employee receives an annual rating of ineffective or partially effective in one year, followed by an annual rating of ineffective the next year.[5]

---

[5] A charge of inefficiency may also be filed if an employee receives two consecutive annual ratings of partially effective,
(continued)

N.J.S.A. 18A:6-17.3(a)(1). But "[t]he only evaluations which may be used for purposes of this section are those evaluations conducted in accordance with a rubric adopted by the board and approved by the commissioner pursuant to [TEACHNJ]." N.J.S.A. 18A:6-17.3(d). The arbitrator in the Chavez matter thus concluded that since the evaluation rubrics referenced were not in place, he was precluded from basing his review on the four factors designated in N.J.S.A. 18A:6-17.2.[6]

The arbitrator in the Pugliese matter, however, did not determine he was constrained by the absence of the evaluation rubrics to be implemented under TEACHNJ, finding instead that he was to "determine whether the tenure charges brought . . . demonstrate that [Pugliese] failed to perform in a satisfactory manner for two consecutive years, the criterion established by

_____

(continued)
or if an employee receives an annual rating of ineffective followed by an annual rating of partially effective. N.J.S.A. 18A:6-17.3(a)(2).

[6] The arbitrator cited to N.J.S.A. 18A:6-17.5, which states:

> Any tenure charge transmitted to the Office of Administrative Law pursuant to N.J.S.[A]. 18A:6-16 prior to the effective date of [TEACHNJ] shall be determined in accordance with the provisions of subarticle B of Article 2 of chapter 6 of Title 18A of the New Jersey Statutes, N.J.S.[A.] 18A:6-10 et seq., as the same read prior to the effective date of [TEACHNJ].

[TEACHNJ]." Both arbitrators cannot be correct in applying different standards to similar procedural matters. Which standard is appropriate for teachers whose tenure charges are brought after the passage of TEACHNJ, but before the TEACHNJ evaluation rubric is implemented, is a determination better resolved in the first instance by the agency with particular expertise in matters of educational policy. See In re Election Law Enforcement Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010) ("[A] state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise.").

"[T]he promulgation of administrative rules and regulations lies at the very heart of the administrative process . . . ." In re N.J.A.C. 7:1B-1.1 Et Seq., 431 N.J. Super. 100, 115 (App. Div.), certif. denied, 216 N.J. 363 (2013). "'[T]he basic purpose of establishing agencies to consider and promulgate rules is to delegate the primary authority of implementing policy in a specialized area to governmental bodies with the staff, resources and expertise to understand and solve those specialized problems.'" Ibid. (quoting Bergen Pines Cnty. Hosp. v. N.J. Dep't of Human Servs., 96 N.J. 456, 474 (1984)).

Chavez and Pugliese also raised various other legal defenses, which were not resolved by the arbitrators or the trial court, including: the application of Tenure Employees Hearing Law, N.J.S.A. 18A:6-10 to -18.1, specifically N.J.S.A. 18A:6-11 and the ninety-day improvement plan requirement deleted by the TEACHNJ amendment; the District's policies with respect to tier implementation guidelines; and contentions that, pursuant to NCLB, it was illegal to assign them to teach a course for which they were not designated "highly qualified."[7] Defendant argues that by sending both of these matters to arbitrators, the Commissioner implicitly considered and rejected both teachers' legal defenses. We do not accept this argument.

An agency has the obligation to make decisions clearly with its reasons spelled out on the record. An implicit, silent rejection of legal defenses based on overlapping statutory

---

[7] We note that both teachers cite to two administrative law decisions in support of their contentions concerning the relevance of a "highly qualified" designation. Neither of these decisions is precedential and both concern teacher seniority rather than teacher inefficiency, which is at issue here. We further note that NCLB provides for a discretionary penalty for non-compliance with the "highly qualified" designation or other requirements of the Act. 20 U.S.C.A. § 6311(g)(2). In addition, while NCLB seeks to ensure that teachers of "core academic subjects" are "highly qualified," 20 U.S.C.A. § 6319(a)(2), social studies is not among the core academic subjects identified. 20 U.S.C.A. § 7801(11).

regulations does not meet that criteria. As we have said previously, "we insist that the agency disclose its reasons for any decision, even those based upon expertise, so that a proper, searching, and careful review by this court may be undertaken." Balaqun v. N.J. Dept. of Corrs., 361 N.J. Super. 199, 203 (App. Div. 2003).

"Courts . . . have discretion to remand administrative action for further agency proceedings in the interest of justice." Texter v. Dep't of Human Servs., 88 N.J. 376, 383 (1982)(citing Wilson v. Mountainside, 42 N.J. 426, 442 (1964)). We recognize "'that certain subjects are within the peculiar competence of that agency.'" D.I.A.L., Inc. v. N.J. Dep't of Cmty. Affairs, 254 N.J. Super. 426, 435 (App. Div. 1992)(quoting In re Amendment of N.J.A.C. 8:31B-3.31, 119 N.J. 531, 543 (1990)). "[W]e may not substitute our judgment for the expertise of the agency." Ibid. (citing Doughtery v. Dep't of Human Servs., 91 N.J. 1, 6 (1982)).

Thus, we remand both matters to the Department of Education to determine the validity of those legal defenses raised by each teacher deemed appropriate by the agency for resolution by the agency, so that a uniform educational policy will be promulgated. The agency should determine the appropriate standards to be used by arbitrators when adjudicating tenure

hearings, thus determining a consistent procedure for teachers in positions similar to Chavez and Pugliese, who have received tenure charges after the effective date of TEACHNJ, alleging poor performance that occurred prior to the implementation of the statute's new standards.

Reversed and remanded to the Department of Education. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0857-13T2