**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2196-16T1

FELICIA PUGLIESE,

    Plaintiff-Appellant,

v.

STATE-OPERATED SCHOOL
DISTRICT OF THE CITY OF
NEWARK, ESSEX COUNTY,

    Defendant-Respondent.

_____

          Argued February 1, 2018 — Decided August 28, 2018

          Before Judges Simonelli, Haas and Rothstadt.

          On appeal from Superior Court of New Jersey,
          Chancery Division, Essex County, Docket No.
          C-000215-16.

          Richard A. Friedman argued the cause for
          appellant (Zazzali, Fagella, Nowak, Kleinbaum
          & Friedman, attorneys; Richard A. Friedman,
          of counsel and on the briefs; Kaitlyn E.
          Dunphy and Marissa A. McAleer, on the briefs).

          Brenda C. Liss argued the cause for respondent
          (Riker Danzig Scherer Hyland & Perretti, LLP,
          attorneys; Brenda C. Liss, of counsel and on
          the brief; Fiona E. Cousland, on the brief).

PER CURIAM

Plaintiff Felicia Pugliese appeals from the January 13, 2017 Chancery Division order, which confirmed a June 8, 2016 arbitration award rendered pursuant to the Tenure Employees Hearing Law (TEHL), N.J.S.A. 18A:6-10 to -18.1. The arbitrator found plaintiff culpable of inefficiency and dismissed her from her position as a tenured teacher with defendant State-Operated School District of the City of Newark (District). We reverse.

I.

Pugliese was employed by the District from 2004 to 2013. She has a Bachelor of Arts degree with a major in sociology and a Master's Degree as a reading specialist. In 2006, the Department of Education issued her a standard certificate stating she met the requirements to serve as an elementary school teacher. She also had an endorsement to teach "Language Arts Literacy (English, Reading, Language Arts)," and satisfied the "highly qualified" teacher definition under the No Child Left Behind Act of 2001 (NCLB), 20 U.S.C.A. §§ 6301 to 7941 to teach that subject. She taught language arts and reading to small groups of elementary school students for the 2004-2005 to 2009-2010 school years, received "proficient" ratings for each school year, and acquired tenure in this position.

In the 2010-2011 and 2011-2012 school years, the District reassigned Pugliese to teach large departmentalized "Social Studies (Economics, History, Civics, Geography)" for fifth-through eighth-grade middle school students. She had no social studies or middle school social studies certificates, endorsements, or authorizations,[1] and did not satisfy the "highly qualified" teacher definition under the NCLB or the New Jersey High Objective Uniform Standard of Evaluation for General Education and Special Education Teachers (HOUSE) to teach social studies. As required by the NCLB, the District notified the parents and guardians of Pugliese's students that she did not meet the "highly qualified" requirement to teach social studies. 20 U.S.C.A. § 6312 (e)(1)(B).

For the school years 2010-2011 and 2011-2012, Pugliese received ratings of "basic" and "unsatisfactory," respectively. The negative issues identified in her evaluations included her failure to design coherent instruction, engage students in learning, and demonstrate knowledge of content and pedagogy.

On March 26, 2012, the District served Pugliese with a notice of intent to file tenure charges against her for inefficiency. The District also served her with a professional improvement plan

---

[1] See N.J.A.C. 6A:9B-9.3(a)(6) (recodified at N.J.A.C. 6A:9-9.2(a)(6)).

(PIP), which allowed her ninety-days to correct and overcome the inefficiency, as required by the terms of N.J.S.A. 18A:6-11 and N.J.A.C. 6A:3-5.1(c)(4), then in effect. The ninety-day correction period expired on June 25, 2012. Pugliese did not meet with the principal on March 26, 2012 to discuss the charge and the PIP because her union representative was not available. The meeting occurred on March 29, 2012.

Pursuant to the PIP, a master social studies teacher was to assist Pugliese throughout the ninety-day period. However, the master teacher only assisted Pugliese on three occasions. The District provided no master teacher or other remedial assistance to Pugliese after May 9, 2012. Thus, Pugliese received no assistance from the District for forty-seven of the ninety-day correction period.

On July 23, 2012, the District served Pugliese with a post-improvement period notice, charging her with inefficiency based on her alleged failure to improve during the ninety-day correction period. On September 12, 2012, the District certified the tenure charge to the Commissioner of Education (Commissioner), and suspended Pugliese without pay for 120 days, effective September 12, 2012.

Prior to the disposition of the tenure charge, in August 2012, the Legislature enacted the Teacher Effectiveness and

Accountability for Children of New Jersey Act (TEACHNJ), N.J.S.A. 18A:6-117 to -129. Although tenure charges are still filed under the TEHL, TEACHNJ amended the procedural process applicable to those charges. Under the amended procedures, if the Commissioner determined the tenure charge was sufficient to warrant dismissal or reduction in salary, "he shall refer the case to an arbitrator pursuant to [N.J.S.A. 18A:6-17.1] for further proceedings[.]" N.J.S.A. 18A:6-16.

On September 28, 2012, Pugliese filed an answer and separate defenses. She asserted her assignment as a departmentalized social studies teacher was illegal because she was not "highly qualified" to teach social studies, as required by the NCLB, and the District could not find her inefficient in a position to which she was illegally assigned. She asserted the District failed to afford her the full ninety-day correction period. She also asserted the District did not afford her the opportunity to participate in the formulation of the PIP or provide reasonable assistance, and the assistance provided was inadequate, as it was not individualized or created or provided solely for her benefit.

On October 1, 2012, the Commissioner determined the tenure charge was sufficient to warrant dismissal or a reduction in salary, and transferred the matter to an arbitrator. The arbitrator applied the procedural standard in TEACHNJ to determine

whether the tenure charge demonstrated that Pugliese failed to perform in a satisfactory manner for two consecutive years. See Pugliese v. State-Operated Sch. Dist. of City of Newark, 440 N.J. Super. 501, 511-12 (App. Div. 2015). This differed from the procedural standard another arbitrator applied in a companion case involving a teacher who, like Pugliese, had tenure charges filed after TEACHNJ was enacted for conduct occurring before then. Id. at 511. We reversed, determining that "[b]oth arbitrators cannot be correct in applying different standards to similar procedural matters." Id. at 512. We remanded for the Commissioner to determine "[w]hich standard is appropriate for teachers whose tenure charges [were] brought after the passage of TEACHNJ, but before the TEACHNJ evaluation rubric [was] implemented[.]" Ibid. We held "[t]he Commissioner must . . . inform the arbitrator what legal standard to utilize, after which the arbitrators must review the facts anew within this legal framework." Id. at 503.

We also found that the arbitrator, Commissioner, and trial court did not resolve Pugliese's legal defenses. Id. at 512. Thus, we directed the Commissioner, on remand, "to explicitly decide those legal defenses that the Commissioner does not expressly delegate to the statutorily-mandated arbitrator to decide." Id. at 503. The Commissioner subsequently returned the matter to the same arbitrator with instruction to review the facts

anew under the preponderance of the evidence standard and determine the validity of Pugliese's legal defenses.

In a June 8, 2016 arbitration award, the arbitrator determined the District demonstrated by a preponderance of the evidence that the tenure charge should be sustained. Addressing Pugliese's legal defenses, the arbitrator found her assignment to teach departmentalized social studies was not illegal because the "highly qualified" requirement of the NCLB only applied to teachers in a departmental high school setting.

The arbitrator also found that Pugliese "could properly have been assigned under her licensure to teach all elementary core subjects, including social studies, in a non-departmentalized elementary school setting." The arbitrator reasoned that the elementary school level social studies curriculum required a teacher to "possess general knowledge of history, government, sociology, and other related topics sufficient to understand and implement the curriculum[,]" and as a former sociology major, Pugliese could grasp and convey the social studies curriculum. The arbitrator also noted that the NCLB and New Jersey statute then in effect did not expressly limit "highly qualified" designations for teaching social studies to history or government.

The arbitrator found that Pugliese "was invited to participate in the formulation of her [PIP] or to add input

concerning the parameters of the PIP, but elected not to avail herself of this opportunity." The arbitrator also found the truncation of the ninety-day correction period by three days was attributable to Pugliese's refusal to meet with school administrators because her union representative was unavailable. The arbitrator reasoned that while Pugliese was entitled to union representation, "an employee cannot unilaterally precipitate an entitlement to an additional year's employment simply by delaying the meeting at which tenure charges are to be delivered or a PIP is to commence until fewer than ninety days remain in the school year." The arbitrator concluded, "if the PIP was properly created, and if the school administration provided the requisite support materials, evaluations, feedback, and opportunity for [Pugliese] to demonstrate improvement, the loss of three days would not invalidate an otherwise proper PIP interval." The arbitrator also determined that the extra three days would not have altered the outcome because Pugliese did not demonstrate significant improvement during the eighty-seven day period she was afforded.

Notably, the arbitrator found that:

> the District failed to provide tailored
> support for [Pugliese] throughout the PIP
> interval, as . . . no [m]aster [t]eacher or
> other supporting expert assisted [Pugliese] in
> improving her classroom performance after mid-
> May of the 2011-12 school year. The
> evidentiary record established that no

A-2196-16T1

remedial help was provided to [Pugliese] after May 9, 2012, creating a potentially material defect in administering the PIP as required under pre-[TEACH]NJ standards.

The arbitrator determined "the District's failure to provide substantial assistance for almost half the PIP interval constituted a significant defect in the PIP process" and "[t]he District's failure to provide supervision and supplemental support after May 9, 2012 potentially eroded the essential purpose of the PIP."

Despite these findings, the arbitrator determined "the District's failure to provide more adequate assistance after May 9, 2012 was not a material defect in the [PIP] invalidating the tenure charges solely on the basis of diminished [m]aster [t]eacher interaction or insufficient provision of other support resources[.]" He concluded that Pugliese could have demanded more assistance from the master teacher or other support services after May 9, 2012, but did not do so. He also concluded that "absent any clearly articulated demand for more help from [Pugliese] or any noticeable improvement in her teaching, the perfunctory support afforded to [Pugliese] during the second half of the [PIP] interval did not invalidate the District's compliance with the PIP requirements then in effect." The arbitrator held that termination was the appropriate penalty.

 A-2196-16T1

Pugliese filed a motion to vacate the arbitration award. The motion judge agreed with the arbitrator's findings on Pugliese's legal defenses, concluded the arbitrator's decision was based on substantial credible evidence in the record, and confirmed the arbitration award. This appeal followed.

II.

On appeal, Pugliese contends the motion judge erred in confirming the arbitration award because it was contrary to the law, and thus, procured by undue means, and against public policy. She argues the award violated N.J.S.A. 18A:6-11 and N.J.A.C. 6A:3-5.1(c)(4) because she was deprived of the entire ninety-day correction period to improve her performance and positive assistance during that period. She also argues the District could not evaluate or terminate her for inefficiency in an assignment to which she was illegally assigned and for which she was not "highly qualified" to teach.

The arbitrator has the sole authority to "hear and make a final determination on a controversy and dispute arising under [N.J.S.A. 18A:6-10]." N.J.S.A. 18A:6-9. The arbitrator's decision is "final and binding and may not be appealable to the [C]omissioner" but rather, "shall be subject to judicial review and enforcement as provided pursuant to N.J.S.A. 2A:24-7 [to -10.] N.J.S.A. 18A:6-17.1(e).

"Judicial review of an arbitration award is very limited." Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 11 (2017) (quoting Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010)). "An arbitrator's award is not to be cast aside lightly. It is subject to being vacated only when it has been shown that a statutory basis justifies that action." Ibid. (quoting Kearny PBA Local # 21 v. Town of Kearny, 81 N.J. 208, 221 (1979)). "As the decision to vacate an arbitration award is a decision of law, [we] review[] the denial of a motion to vacate an arbitration award de novo." Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013) (quoting Manger v. Manger, 417 N.J. Super. 370, 376 (App. Div. 2010)).

The court may vacate an arbitration award "[w]here the award was procured by corruption, fraud or undue means[.]" N.J.S.A. 2A:24-8(a). "'[U]ndue means' ordinarily encompasses a situation in which the arbitrator has made an acknowledged mistake of fact or law or a mistake that is apparent on the face of the record[.]" Borough of E. Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 203 (2013) (first alteration in original) (quoting Office of Emp. Relations v. Commc'n Workers of Am., 154 N.J. 98, 111-12 (1998)). "[A]n arbitrator's failure to follow the substantive law may . . . constitute 'undue means' which would require the award to be vacated." In re City of Camden, 429 N.J. Super. 309, 332

11

(App. Div. 2013) (quoting <u>Jersey City Educ. Ass'n, Inc. v. Bd. of Educ.</u>, 218 N.J. Super. 177, 188 (App. Div. 1987)).  However, to constitute undue means, "[t]he judicial inquiry must consider more than whether a mere mistake occurred."  <u>Minkowitz</u>, 433 N.J. Super. at 150).  Rather, the

> formulation requires that the arbitrator[] must have clearly intended to decide according to law, must have clearly mistaken the legal rule, and that mistake must appear on the face of the award.  In addition, the error, to be fatal, must result in a failure of intent or be so gross as to suggest fraud or misconduct.
>
> [<u>Id.</u> at 150-51) (alteration in original) (quoting <u>Trentina v. Fitzpatrick & Assocs.</u>, 135 N.J. 349, 357 (1994)).]

"'[U]ndue means' . . . does not include situations . . . where the arbitrator bases his decision on one party's version of the facts, finding that version to be credible."  <u>Local No. 153, Office & Prof'l Emps. Int'l Union, AFL-CIO v. Tr. Co. of N.J.</u>, 105 N.J. 442, 450 n.1 (1987)).

In addition, a court may vacate an arbitration award for public policy reasons.  <u>Borough of E. Rutherford</u>, 213 N.J. at 202.  "However, '[r]eflecting the narrowness of the public policy exception, that standard for vacation will be met only in rare circumstances.'"  <u>Ibid.</u>  (alteration in original) (quoting <u>N.J. Tpk. Auth. v. Local 196, I.F.T.E.</u>, 190 N.J. 283, 294 (2007)).  "Public policy is ascertained by 'reference to the laws and legal

precedents and not from general considerations of supposed public interests.'"  Id. at 202-03 (quoting Weiss v. Carpenter, Bennett & Morrissey, 143 N.J. 420, 434-35 (1996)).  "And, even when the award implicates a clear mandate of public policy, the deferential 'reasonably debatable' standard still governs.  Thus, '[i]f correctness of the award, including its resolution of the public-policy question, is reasonably debatable, judicial intervention is unwarranted.'"  Id. at 203 (alteration in original) (quoting Weiss, 143 N.J. at 443).  As our Supreme Court explained, "[a]ssuming that the arbitrator's award accurately has identified, defined, and attempted to vindicate the pertinent public policy, courts should not disturb the award merely because of disagreements with arbitral fact findings or because the arbitrator's application of the public-policy principles to the underlying facts is imperfect."  Ibid.  (alteration in original) (quoting Weiss, 143 N.J. at 443).

A.

We first address Pugliese's argument that the arbitration award violated N.J.S.A. 18A:6-11 and N.J.A.C. 6A:3-5.1(c)(4) because she was deprived of the entire ninety-day correction period to improve her performance and positive assistance during that period.

Prior to its amendment, N.J.S.A. 18A:6-11 provided, in pertinent part, "that if the [tenure] charge is inefficiency, prior to making its determination as to certification, the board shall provide the employee with written notice of the alleged inefficiency, specifying the nature thereto, and allow at least [ninety] days in which to correct and overcome to inefficiency." N.J.A.C. 6A:3-5.1(c)(4) provided:

> Concurrent with notifying the employee of such charges of inefficiency, the district board of education or the State district superintendent shall direct that there be a modification of the individual professional improvement plan mandated by [N.J.A.C.] 6A:32-4.3 or 4.4, to assure that such plan addresses the specific charges of inefficiency and comports with the timelines established for correction.

As we have held, "compliance by the local board with its obligation to afford the teacher the 90-day correction period constitutes an absolute prerequisite to its right to certify charges against the teacher and, consequently, that a failure of compliance compels dismissal of the charges." Rowley v. Bd. of Educ., 205 N.J. Super. 65, 72 (App. Div. 1985). Moreover, Section IIB4 of the Guidelines for Implementation of the TEHL, Department of Education, Division of Controversies and Disputes (May 3, 1977), "provides that '[d]uring the aforementioned [ninety] day period, members of the administrative/supervisory staff should make

reasonable efforts to provide assistance to the teaching staff member to overcome the specific inefficiencies.'" Ibid. The Commissioner "has consistently construed the statutory mandate in the light of this guideline, concluding that 'if a board chooses to file tenure charges of inefficiency against any teacher, the administration bears the heavy responsibility to render positive assistance to the teacher in an effort to overcome his inefficiencies.'" Ibid. (emphasis added) (citations omitted). The State Board of Education has stated that:

> under [N.J.S.A.] 18A:6-11, a local board of education is duty bound to assist a tenured teaching staff member, against whom it has filed charges of inefficiency, in improving his teaching performance before removing him from his teaching position. . . . The rationale underlying this rule is that a teacher whose teaching effectiveness is called into question after years of meritorious service in a school district should, in recognition of that contribution, be afforded an opportunity to demonstrate that he is still capable of effective teaching. He can only avail himself of that opportunity if he understands clearly the basis for the criticism supporting the allegations of inefficiency and is offered constructive advice as to how he might restore his teaching skills.
>
> [Id. at 73.]

Accordingly, the failure to accord a teacher a ninety-day correction period and positive assistance during that period compels dismissal of the charges. Id. at 74; see also In the

Matter of the Tenure Hearing of Parisi, EDU 5793-03, final decision, at 9 (Aug. 7, 2008), http://njlaw.rutgers.edu/collections/oal/final/edu09654-08_1.pdf.

Here, Pugliese received notice of the tenure charge and the PIP on March 26, 2012. The ninety-day correction period began on that date, not on March 29, 2012, as she argues. See id. at 8-9. Pugliese's delay in meeting to discuss the tenure charge and PIP did not extend the ninety-day period, and she cites no authority to the contrary. Accordingly, the arbitrator correctly determined that the truncated ninety-day correction period was no reason to dismiss the tenure charge.

Nevertheless, the arbitrator erred in determining the District's failure to provide Pugliese with positive assistance throughout the ninety-day correction period was no reason to dismiss the tenure charge. As the arbitrator found, the PIP was not specifically tailored for Pugliese throughout the PIP period, as required by N.J.A.C. 6A:3-5.1(c)(4), and the only real assistance she received was from the master teacher. However, the PIP provided that a master teacher would assist Pugliese throughout the entire ninety-day PIP period, but a master teacher only assisted her on three occasions, and assistance ceased on May 9, 2012. The District provided no remedial assistance to Pugliese thereafter to help her correct or improve her performance. As the

arbitrator acknowledged, the District's failures "constituted a significant defect in the PIP process" and "potentially eroded the essential purpose of the PIP."

Contrary to the arbitrator's reasoning, it was not Pugliese's burden to demand continuation of the master teacher or additional assistance during the correction period. Nor could the District unilaterally decide to prematurely terminate assistance for Pugliese's alleged failure to improve. The law clearly required the District to render positive assistance to Pugliese throughout the entire ninety-day correction period, which it failed to do. See Rowley, 205 N.J. Super. at 73.

The District's non-compliance with the law in this case compelled dismissal of the tenure charge. Id. at 74. The arbitrator's failure to dismiss the tenure charge was contrary to the law, and thus, the arbitration award was procured by undue means and must vacated.

B.

We next address Pugliese's argument that the District could not evaluate or terminate her for inefficiency in an assignment to which she was illegally assigned and for which she was not "highly qualified" to teach. As a threshold issue, we address the District's contention that collateral estoppel and the law-of-the-case doctrine bar Pugliese from re-litigating the "highly

17

qualified" issue. Collateral estoppel prevents future litigation on the issue when:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [Winters v. N. Hudson Reg'l Fire & Rescue, 212 N.J. 67, 85 (2012) (quoting Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521 (2006)).]

"Fundamental to the application of estoppel is an assessment of considerations such as 'finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts, confusion and uncertainty; and basic fairness.'" Ibid. (quoting Olivieri, 186 N.J. at 522). "In short, collateral estoppel will not apply if a party did not have a 'full and fair opportunity to litigate the issue.'" State v. K.P.S., 221 N.J. 266, 278 (2015) (quoting Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 338 (1996)).

"The law-of-the-case doctrine 'is a non-binding rule intended to prevent relitigation of a previously resolved issue' in the same case." Id. at 276 (quoting Lombardi v. Masso, 207 N.J. 517,

538 (2011)). "The law of the case doctrine teaches us that a legal decision made in a particular matter 'should be respected by all other lower or equal courts during the pendency of that case.'" Lombardi, 207 N.J. at 538 (quoting Lanzet v. Greenberg, 126 N.J. 168, 192 (1991)). "A hallmark of the law of the case doctrine is its discretionary nature, calling upon the deciding judge to balance the value of judicial deference for the rulings of a coordinate judge against those 'factors that bear on the pursuit of justice and, particularly, the search for truth.'" Id. at 538-39 (quoting Hart v. City of Jersey City, 308 N.J. Super. 487, 498 (App. Div. 1998)). "Importantly, the law of the case doctrine is only triggered when one court is faced with a ruling on the merits by a different and co-equal court on an identical issue." Id. at 539.

In Pugliese, 440 N.J. Super. at 503, we found the arbitrator, Commissioner, and trial court did not resolve Pugliese's legal defenses, and reversed the first arbitration award and remanded for a review of the facts anew and a determination of the validity of Pugliese's legal defenses. Accordingly, because the issue of Pugliese's legal defenses was not resolved in the prior proceedings, the doctrine of collateral estoppel and the law-of-the-case doctrine do not apply in this case. That having being said, we address Pugliese's argument.

19

The NCLB

> reflects Congress' judgment that the best way to raise the level of education nationwide is by granting state and local officials flexibility to develop and implement educational programs that address local needs, while holding them accountable for the results. NCLB implements this approach by requiring States receiving federal funds to define performance standards and to make regular assessments of progress toward the attainment of those standards.
>
> [<u>Horne v. Flores</u>, 557 U.S. 433, 461 (2009) (citing 20 U.S.C.A. § 6311(b)(2)).]

See also <u>Pugliese</u>, 440 N.J. Super. at 507. The NCLB requires that "each State educational agency receiving assistance . . . shall develop a plan to ensure that all teachers teaching in core academic subjects . . . are highly qualified not later than the end of the 2005-2006 school year." 20 U.S.C.A. § 6319(a)(2). To satisfy the NCLB's definition of "highly qualified" a teacher must have a Bachelor's degree, a valid state certification, and demonstrate content expertise in the core academic subjects taught. 20 U.S.C.A. § 7801(23)(c).

The NCLB defines "core academic subjects" as "[e]nglish, reading or language arts, mathematics, science, foreign languages, <u>civics and government</u>, <u>economics</u>, arts, <u>history, and geography</u>." 20 U.S.C.A. § 7801(11) (emphasis added). While social studies is not specifically defined as a core academic subject, social studies

includes civics, government, economics, history, and geography, see N.J.A.C. 6A:9B-9.3(a)(6)(ii), which are core academic subjects required to be taught by "highly qualified" teachers under the NCLB.

Contrary to the arbitrator's finding, Pugliese did not satisfy the "highly qualified" definition under the NCLB to teach social studies. The record is de void of evidence that she had a valid state certification, endorsement, or authorization to teach social studies, or content expertise in civics, government, economics, history, and geography. Although she majored in sociology, sociology does not include these "core academic subjects." See Merriam-Webster's Collegiate Dictionary, 1115 (10th ed. 1993) (defining sociology as "the science of society, social institutions, and social relationships; specifically: the systematic study of the development, structure, interaction, and collective behavior of organized groups of human beings"). Accordingly, the arbitrator's finding that Pugliese was highly qualified to teach social studies based on her major in sociology was a blatant misapplication of the "highly qualified" standard not supported by Pugliese's certification or endorsement. Thus, she was not "highly qualified" under the NCLB to teach social studies and the District should not have placed her in that assignment.

Pugliese was also not qualified to teach departmentalized middle school social studies under New Jersey law. Prior to the enactment of TEACHNJ, N.J.A.C. 6A:9B-9.1(a)(3) provided that:

> Teachers with elementary school endorsements that are valid in grades nursery through eight issued no later than March 1, 2008, may teach in grades nursery through eight in any employing school district. <u>These teachers must demonstrate to the school district that they have content knowledge appropriate to the subject(s) taught</u>.
>
> [(Emphasis added).]

Pugliese had an elementary school teacher certificate, which did not authorize her to teach social studies to middle school students. She had no endorsement or authorization to teach middle school social studies.[2] <u>See</u> N.J.A.C. 6A:9B-9.3(a)(6) (recodified at N.J.A.C. 6A:9-9.2).

Further, in order to teach in this position, she had to demonstrate she had "content knowledge" in social studies. To demonstrate "content knowledge," she had to meet the criteria under HOUSE, by passing the appropriate Praxis II Middle Content Test, have an undergraduate major in the content, thirty credits in the content, a graduate degree in the content, or a national board certification in the content. <u>See</u> Carol Albrition, Rani

---

[2] Pugliese did not even qualify for a social studies or middle school social studies endorsement. <u>See</u> N.J.A.C. 6A:9B-9.1(a).

Singh & Kerri Long, Teacher Quality And School Improvement: A Primer for Certification and Highly Qualified, N.J. Dep't of Educ., http://www.state.nj.us/education/title1/archive/hqs/nclb/pp.pdf. She met none of these requirements. She, thus, was not qualified to teach middle school social studies under New Jersey law.

Because Pugliese was not certified, authorized, qualified, or "highly qualified" to teach middle school social studies, and had no content knowledge in social studies, her assignment to that position was contrary to the law. As a matter of law, the District could not evaluate and terminate her for inefficiency in this position.

Having reached this conclusion, we need not address Pugliese's remaining contentions that the judge applied the wrong test in reviewing the arbitration award, and the penalty of termination violated the doctrine of progressive discipline.

The January 13, 2017 Chancery Division order is reversed, and the June 8, 2016 arbitration award is vacated.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

23

A-2196-16T1