**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4546-16T4

H.G., a minor, through her
guardian TANISHA GARNER; F.G.,
a minor, through her guardian
TANISHA GARNER; E.P., a minor,
through his guardian NOEMI
VAZQUEZ; M.P., a minor,
through his guardian NOEMI
VAZQUEZ; F.D., a minor through
her guardian, NOEMI VAZQUEZ;
W.H., a minor, through his
guardian FAREAH HARRIS; N.H.,
a minor, through his guardian
FAREAH HARRIS; J.H., a minor,
through his guardian SHONDA
ALLEN; O.J., a minor, through
his guardian IRIS SMITH; M.R.,
a minor, through his guardian
IRIS SMITH; Z.S., a minor,
through her guardian WENDY
SOTO; D.S., a minor, through
his guardian WENDY SOTO,

    Plaintiffs-Appellants,

v.

KIMBERLY HARRINGTON, in her
official capacity as Acting
Commissioner of the New Jersey
Department of Education; NEW
JERSEY STATE BOARD OF
EDUCATION; nominal defendant
NEWARK PUBLIC SCHOOL DISTRICT;
and nominal defendant
CHRISTOPHER CERF, in his
official capacity as

Superintendent of the Newark
Public School District,

    Defendants-Respondents,

and

NEW JERSEY EDUCATION ASSOCIATION,
AMERICAN FEDERATION OF TEACHERS,
AFL-CIO, AFT NEW JERSEY, and the
NEWARK TEACHERS UNION,

    Defendants/Intervenors-
    Respondents.

Argued April 25, 2018 — Decided June 27, 2018

Before Judges Fuentes, Koblitz, and Manahan.

On appeal from Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-2170-16.

Kathleen A. Reilly (Arnold and Porter Kaye Scholer LLP) of the New York bar, admitted pro hac vice, argued the cause for appellants (Tompkins, McGuire, Wachenfeld, and Barry, LLP, and Kathleen A. Reilly, attorneys; William H. Trousdale, Maximilian D. Cadmus, Colleen Lima (Arnold and Porter Kaye Scholer LLP) of the New York bar, admitted pro hac vice, Kent Yalowitz (Arnold and Porter Kaye Scholer LLP) of the New York bar, admitted pro hac vice, and Kathleen A. Reilly, of counsel and on the brief).

Richard E. Shapiro argued the cause for intervenors-respondents New Jersey Education Association (Zazzali, Fagella, Nowak, Kleinbaum & Friedman, and Richard E. Shapiro, LLC, attorneys; Richard E. Shapiro, Richard A. Friedman, Kenneth I. Nowak, Flavio L. Komuvas, and Steven R. Cohen, of counsel on the brief).

Steven P. Weissman argued the cause for intervenors-respondents American Federation

of Teachers, AFL-CIO, AFT New Jersey, and the Newark Teachers Union (Weissman and Mintz LLC, attorneys; Steven P. Weissman, on the brief).

PER CURIAM

In this education matter, plaintiffs, twelve individual Newark Public School students through their guardians, appeal from a May 3, 2017 dismissal of their declaratory judgment complaint based on a lack of standing and ripeness. We affirm because the issues are not ripe for review.

I.

On November 1, 2016, plaintiffs filed a civil complaint for declaratory and injunctive relief, alleging five causes of action against defendants Kimberly Harrington, in her capacity as the Acting Commissioner of the New Jersey Department of Education, and the New Jersey State Board of Education (collectively "DOE"). Plaintiffs also sought relief against the Newark Public School District and District Superintendent Christopher Cerf (collectively "the District").[1]

---

[1] At the time of the notice of appeal, Newark was a state-operated school district. On February 1, 2018, the District returned to local control. See Press Release, DOE Approves the Transition Plan for Local Control in Newark Public Schools (December 21, 2017), http://www.state.nj.us/education/news/2017. The District, however, still receives substantial state aid. DOE, Office of School Finance, 2017-2018 K-12 State Aid School Districts, http://www.nj.gov/education/stateaid/1718/district.pdf.

In the first cause of action, plaintiffs asked the court to enjoin the enforcement of two provisions of the Tenure Act, N.J.S.A. 18A:28-1 to -18, which plaintiffs refer to as the "last-in, first-out" (LIFO) provisions--N.J.S.A. 18A:28-10 and 18A:28-12. N.J.S.A. 18A:28-10 requires the District to use seniority as the exclusive factor when conducting a reduction in force (RIF) of tenured teachers, or when re-staffing following a RIF, pursuant to N.J.S.A. 18A:28-12. Plaintiffs alleged that "[t]his policy has required, and will continue to require, Newark and other similarly situated districts to retain ineffective teachers while laying off effective teachers," depriving plaintiffs of the "thorough and efficient education" guaranteed them under our Constitution. N.J. Const. art. VIII, § IV, ¶ 1.

In the second cause of action, plaintiffs claimed that the same statutes, as applied to them, violated their right to equal protection under Article I, Paragraph 1 of the New Jersey Constitution, because the statutes have disproportionately affected students of color in areas of concentrated poverty, thereby denying such students the opportunity to receive a thorough and efficient education.

In the third cause of action, plaintiffs alleged that the statutes violated their due process rights, also under Article I,

Paragraph 1, by depriving them of their fundamental right to a thorough and efficient education.

In the fourth cause of action, plaintiffs alleged that enforcing the LIFO provisions in the District violated their rights under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2, by depriving them of a thorough and efficient education.

The fifth cause of action sought a declaratory judgment under the New Jersey Declaratory Judgment Act, N.J.S.A. 2A:16-50 to -62, finding the LIFO statutes unconstitutional as applied to plaintiffs and students in similarly situated districts.

In December 2016, the American Federation of Teachers, the AFL-CIO, AFT New Jersey, and the Newark Teachers Union (collectively, "AFT"), and the New Jersey Education Association (NJEA) successfully moved to intervene as defendants.

The DOE raised several affirmative defenses, including that plaintiffs lacked standing, and that the claims were not ripe for review. AFT and NJEA moved to dismiss the complaint in lieu of filing answers, also on the basis of a lack of standing and ripeness. The Law Division dismissed the complaint under Rule 4:6-2(e) due to a lack of standing and ripeness.

Each minor plaintiff attends one of the District's public schools. Plaintiffs alleged the following facts in their complaint. The District is failing to provide a high-quality

education to its students, resulting in a graduation rate of just over 69%, which is 20% lower than the statewide graduation rate. The literacy rate for students in the District is in the bottom 25% of the State, and their mathematics proficiency rating is in the bottom 10%. Only 50% of eighth graders meet the State's minimum proficiency for literacy and only 40% also meet the minimum standard for mathematics.

Plaintiffs placed the blame for these outcomes on the District's retention of ineffective tenured teachers. Plaintiffs relied on statistics published by the DOE, which tracks educator evaluation data that schools submit pursuant to the Teacher Effectiveness and Accountability for the Children of New Jersey (TEACHNJ) Act, N.J.S.A. 18A:7-117 to -129. The Act requires school districts to evaluate teaching staff annually with one of four descriptors: ineffective, partially effective, effective, and highly effective. N.J.S.A. 18A:6-123(b). The Act further empowers the superintendent of a school district to bring tenure charges against a teacher found ineffective in two consecutive annual evaluations or partially effective in one evaluation and ineffective in the next. N.J.S.A. 18A:6-17.3.

> TEACHNJ was enacted in August 2012. Its goal "is to raise student achievement by improving instruction through the adoption of evaluations that provide specific feedback to educators . . . ." N.J.S.A. 18A:6-118(a). The Legislature declared: "Changing the current

> evaluation system to focus on improved student
> outcomes . . . is critical to improving
> teacher effectiveness, raising student
> achievement, and meeting the objectives of the
> federal '[No Child Left Behind Act, 20 U.S.C.
> § 6301 to -7941] of 2001' . . . ." N.J.S.A.
> 18A:6-118(b).
>
> [Pugliese v. State-Operated Sch. Dist. of City
> of Newark, 440 N.J. Super. 501, 508 (App. Div.
> 2015).]

Plaintiffs lacked specific information about the number of ineffective or partially effective teachers in particular schools, due to confidentiality requirements. See N.J.S.A. 18A:6-121(d), They cited DOE data reflecting that, in the 2013-2014 school year, out of 2775 teachers in the District, 94 (3.4%) had been rated as ineffective and 314 (11.3%) had been rated partially effective.[2] Only 205 teachers were rated ineffective in the entire State, meaning that, as of 2014, nearly 46% of the ineffective public school teachers in New Jersey were employed by the District.

Plaintiffs compared these figures to the more affluent Summit School District where none of its 337 teachers was rated as ineffective or partially effective. Plaintiffs added that if a RIF were to take place in both districts, only in Newark would there be a risk that students would be placed with below-par

---

[2]  The AFT points out that in the 2015-2016 school year only 183 teachers in the District were rated partially effective and only 65 rated ineffective. DOE, Data, http://www.state.nj.us/education/data/staff.

teachers, because of the percentage of ineffective or partially effective teachers in the District.

Plaintiffs further alleged that enrollment has declined in the District, resulting in about $200 million in lost education funding. While declining enrollment would ordinarily lead to a RIF to make up for lost revenue, plaintiffs believe the District has avoided a RIF of teachers in recent years specifically because of the LIFO statutes.

Plaintiffs alleged that to avoid the consequences of RIFs and the risk of having to remove less senior but nevertheless highly effective teachers in favor of more senior ineffective teachers, the District has "resorted to the harmful and unsustainable tactic of keeping ineffective teachers on the district payroll," by creating the Educators Without Placement Sites (EWPS) pool.

In the 2013-2014 school year, the EWPS pool included 271 teachers who were not placed in schools. About 70% of the teachers in the EWPS pool had ten or more years of experience. Plaintiffs alleged that maintenance of this pool has cost the District millions of dollars annually.[3]

---

[3] The total Newark public school budget for 2013-14 school year was $1,017,400,000. Newark Public Schools, 2013-2014 Final Budget & Hearing, http://www.nps.k12.nj.us/mdocs-posts/2013-2014-final-budget-hearing/.

A-4546-16T4

According to plaintiffs, the District paid the EWPS teachers about $22.5 million during the 2013-14 school year, even though they did not have a permanent teaching position. In 2015, the District began to "force place" these teachers in schools without the principal's consent.

Because not everyone from the EWPS pool was placed, in the following year, the District paid about $10 million to the teachers remaining in the EWPS pool. If another RIF occurred, tenured teachers in the pool might be retained while tenured teachers with higher ratings but less experience might be removed. Plaintiffs do not dispute that non-tenured teachers would and should be the first to leave.

Plaintiffs alleged that this practice affects their ability to obtain a thorough and efficient education, because, to comply with the LIFO statutes, the District must either conduct a "quality-blind" RIF and terminate effective teachers or, to avoid that result, pay to preserve the EWPS pool and thereby divert millions of dollars away from plaintiffs' education.

Moreover, plaintiffs asserted that "the specter of quality-blind layoffs at the end of every school year serves to exacerbate qualified teachers' reluctance to apply to work in districts like Newark where the likelihood of layoffs is higher for new teachers,"

and that, as a consequence, qualified candidates will instead seek employment in other school districts.

Finally, plaintiffs alleged that the District's enforcement of the quality-blind statutory scheme governing RIFs results in the removal of quality teachers, lower test scores, lower high school graduation rates, and reduced lifetime earnings for plaintiffs and other students in Newark and "districts like Newark throughout the State."

Superintendent Cerf attested that the District had brought tenure charges against "more than 200 teachers" under the procedure set forth in the TEACHNJ Act. N.J.S.A. 18A:6-17.3(a). Cerf stated, however, that removing teachers through this process "is a time-consuming and cost-intensive process that takes" years "and cost[s] the [D]istrict more than $50,000."

In February 2014, in response to a "fiscal crisis" resulting from declining enrollment, the District submitted an "equivalency request" to the Commissioner pursuant to N.J.A.C. 6A:5-1.1 to -1.7. These regulations authorize the Commissioner to approve an application from a school district to "achieve the intent of a specific rule through an alternative means that is different from, yet judged to be comparable to or as effective as, those prescribed within the rule." N.J.A.C. 6A:5-1.2. The District requested an equivalency that, if approved, would allow it to consider teacher

quality in addition to years of service when determining "seniority" under N.J.A.C. 6A:32-5.1.[4]

According to the District's request, if it were to conduct a RIF that strictly followed the seniority preference embedded in the LIFO statutes and the administrative code, 75% of the terminated teachers would have been rated as either effective or highly effective and only 4% would be teachers who had been rated as ineffective. Conversely, if the equivalency request were granted and the District could consider teacher performance as a criterion in conducting the RIF, then no highly effective teachers would be removed, and 14% of removed teachers would be teachers who had been rated ineffective. We were not informed of the status of this request.

## II.

The trial court dismissed the complaint, finding plaintiffs lacked standing and the case was not ripe. We review a decision to dismiss for failure to state a claim under Rule 4:6-2(e) de novo. Stop and Shop Supermarket Co., v. Cty. of Bergen, 450 N.J. Super. 286, 290 (App. Div. 2017). A claim is "ripe" only if "the harm asserted has matured sufficiently to warrant judicial

---

[4] Newark Public Schools, Overview of Equivalency Request: Protecting Our Best Teachers During a Fiscal Crisis, http://www.nps.k12.nj.us/wp-content/uploads/2014/08/ Overview_of_Equivalency_February_2014_FINAL.pdf.

intervention." <u>Trombetta v. Mayor of Atlantic City</u>, 181 N.J. Super. 203, 223 (App. Div. 1981). "[R]ipeness depends on two factors: '(1) the fitness of issues for judicial review and (2) the hardship to the parties if judicial review is withheld at this time.'" <u>Comm. to Recall Robert Menendez from the Office of U.S. Senator v. Wells</u>, 204 N.J. 79, 99 (2010) (quoting <u>K. Hovnanian Cos. of N. Cent. Jersey, Inc. v. N.J. Dep't of Envtl. Prot.</u>, 379 N.J. Super. 1, 9 (App. Div. 2005)). "A declaratory judgment claim is not ripe for adjudication if the facts illustrate that the rights or status of the parties 'are future, contingent, and uncertain.'" <u>Garden State Equality v. Dow</u>, 434 N.J. 163, 189 (quoting <u>Indep. Realty Co. v. Twp. of N. Bergen</u>, 376 N.J. Super. 295, 302 (App. Div. 2005)).

Plaintiffs do not deny that the District has significantly reduced tenured teachers rated ineffective or partially effective based on TEACHNJ provisions allowing tenure charges to be brought and resolved based on these evaluations.

Plaintiffs concede that the termination of non-tenured teachers in a LIFO situation is beyond their complaint, and do not provide the number or percentage of non-tenured teachers in the District. Thus, a RIF might only affect non-tenured teachers, who must be terminated first. The District is working through TEACHNJ to reduce the number of ineffective or partially effective tenured

12 <span>A-4546-16T4</span>

teachers. It is entirely possible that, through the termination of ineffective tenured teachers, and reeducation and rehabilitation of others now rated ineffective or partially effective, a RIF causing ineffective tenured teachers to teach students while effective tenured teachers are removed may never occur.

To the extent the District's resources could be better spent elsewhere absent an EWPS pool of ineffective or partially effective teachers, the expenditure does not raise an issue of constitutional proportions.

Thus, the issue of LIFO ramifications should a RIF occur is speculative and not ripe for review. We need not address the standing issue.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4546-16T4